1          **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF FLORIDA**
2               **PENSACOLA DIVISION**

3

UNITED STATES OF AMERICA,        )
4                                )
                Plaintiff,       ) Case No: 3:21-CR-51/TKW
5                                )
       v.                        ) Pensacola, Florida
6                                ) March 31, 2022
                                 ) 12:59 p.m.
7  MICHAEL J. MCCLURE,           )
                                 )
8               Defendant.       )
_____)
9

10         **TRANSCRIPT OF SENTENCING HEARING**
       **BEFORE THE HONORABLE T. KENT WETHERELL, II**
11            **UNITED STATES DISTRICT JUDGE**
                  **(Pages 1 through 85)**
12

13  <u>APPEARANCES</u>:

14

For the Government:        United States Attorney's Office
15                         by:  **DAVID L. GOLDBERG** and
                                **JENNIFER CALLAHAN**
16                         21 East Garden Street
                           Suite 400
17                         Pensacola, Florida 32502-5675
                           (850) 444-4000
18                         *david.goldberg@usdoj.gov*
                           *jennifer.callahan@usdoj.gov*
19

20  For the Defendant:     Federal Public Defender's Office
                           by:  **RANDALL S. LOCKHART**
21                         Three West Garden Street
                           Suite 200
22                         Pensacola, Florida 32502-5654
                           (850) 432-1418
23                         *randall_lockhart@fd.org*

24

                    *Julie A. Wycoff, RMR, CRR*
25             *Official United States Court Reporter*
                *(850) 470-8196 * julieawycoff@gmail.com*

1                    **P R O C E E D I N G S**

2           *(Call to Order of the Court.)*

12:59:34  3           THE COURT:  Good afternoon.  Y'all can be seated.

12:59:37  4           All right.  This is Case Number 3:21cr51.  United

12:59:41  5    States v. Michael McClure.

12:59:45  6           Begin with appearances, please.

12:59:47  7           MR. GOLDBERG:  Good afternoon, Your Honor.  David

12:59:48  8    Goldberg and Jennifer Callahan on behalf of the United States.

12:59:53  9           MR. LOCKHART:  Good afternoon, Your Honor.

12:59:54  10   Randall Lockhart on behalf of Michael McClure.

12:59:59  11          THE COURT:  Mr. McClure, you're here as well?

01:00:01  12          THE DEFENDANT:  Yes, sir.

01:00:01  13          THE COURT:  All right.  Good afternoon.

01:00:02  14          THE DEFENDANT:  Good afternoon, sir.

01:00:02  15          THE COURT:  All right.  The purpose of our hearing is

01:00:02  16   a sentencing hearing based upon a plea that was entered and

01:00:06  17   accepted in this case.  Let me tell the parties what I have, and

01:00:09  18   you can tell me if I'm missing anything.

01:00:15  19          I have the presentence report, Document 43, that was

01:00:19  20   most recently revised March 24th; the defendant's sentencing

01:00:24  21   memoranda, Doc 44, which has Dr. Harrison-Spoerl and a law

01:00:31  22   review article of some sort attached to it; the Government's

01:00:34  23   response, Document 45; and the restitution request, Document 47.

01:00:39  24          Was there anything else that the Government filed that

01:00:42  25   I've overlooked?

01:00:44  1          MR. GOLDBERG:  Your Honor, Documents 41 and 42 were

01:00:48  2   filed regarding the defendant's objection to the application of

01:00:49  3   the guidelines in total and the Government's response.

01:00:51  4          THE COURT:  Okay.  And they were summarized in the

01:00:53  5   presentence report?

01:00:54  6          MR. GOLDBERG:  That is correct.

01:00:55  7          THE COURT:  Okay.  Mr. Lockhart?

01:00:57  8          MR. LOCKHART:  No.  That's it, Your Honor.

01:00:58  9          THE COURT:  All right.  Very well.

01:00:59  10         All right.  Mr. McClure, did you have an opportunity

01:01:02  11  to see the presentence report in this case?

01:01:04  12         THE DEFENDANT:  I have, Your Honor.

01:01:04  13         THE COURT:  And did you have a chance to discuss it

01:01:06  14  with Mr. Lockhart?

01:01:08  15         THE DEFENDANT:  I have extensively, Your Honor.

01:01:09  16         THE COURT:  And so he's answered all the questions

01:01:12  17  you've had about it?

01:01:13  18         THE DEFENDANT:  Yes, sir.

01:01:14  19         THE COURT:  And was there anything you identified in

01:01:16  20  the report that you brought to Mr. Lockhart's attention that he

01:01:21  21  told you not to be concerned about and that he wasn't going to

01:01:24  22  raise?

01:01:25  23         THE DEFENDANT:  I don't believe so, Your Honor.

01:01:25  24         THE COURT:  Okay.  Well, if anything happens today

01:01:28  25  that you weren't expecting to happen or doesn't happen today

| | |
|---|---|
| 01:01:31 | 1 |

that you thought was going to happen, have a conversation with

Mr. Lockhart, and he can explain to you or address any concerns

that you have.  If for whatever reason, he is unable to satisfy

your concern and you think it's important enough for me to know

about, get my attention and let me know, because if I don't know

there's a concern that you have, there's nothing I can do about

it.  Okay?

THE DEFENDANT:  Thank you, sir.

THE COURT:  All right.  Procedurally, here's how we're

going to go through the afternoon.  In a moment, I'm going to

have a conversation with the attorneys about the presentence

report and the calculations in the report.  The guideline

calculations are not binding upon me, but it is important that

we get them calculated correctly because I do need to take them

into account, and there is an outstanding legal objection that I

need to work through with the attorneys.

After we complete that process --

Mr. Goldberg, do you anticipate having any witnesses?

MR. GOLDBERG:  No witnesses, Your Honor.  I have a few

exhibits that will just be part of 3553(a) that I can roll into

argument, if that's acceptable to the Court.

THE COURT:  Okay.  Mr. Lockhart, do you expect any

witnesses?

MR. LOCKHART:  I do not, Your Honor.

THE COURT:  All right.  Then, Mr. McClure, after I

01:02:42   1    work through the guideline issues with the attorneys, I'll give

01:02:44   2    you an opportunity to tell me anything you want me to know about

01:02:47   3    the circumstances that bring us here today.  You're not required

01:02:50   4    to tell me anything.  And if you choose not to, I'm not going to

01:02:53   5    hold that against you in any way; but you do have at that right,

01:02:55   6    and I am happy to hear whatever you want to tell me.

01:02:58   7            After that, I'll give the attorneys an opportunity to

01:03:01   8    make their sentencing argument.  After I hear from them, I will

01:03:05   9    have all the information I am going to have and I'll be in a

01:03:08   10   position to announce what your sentence is and explain it to

01:03:10   11   you.

01:03:11   12           Any questions about that process?

01:03:12   13           THE DEFENDANT:  No, sir.

01:03:13   14           THE COURT:  Okay.  All right.  Then, counsel, looking

01:03:19   15   at the presentence report, I understand we do still have one

01:03:23   16   outstanding objection.  It's to paragraph 62.  It's the 4B1.5(b)

01:03:27   17   five-level enhancement.  And just to orient us here, right now

01:03:35   18   the guidelines have a final offense level of 43, a Criminal

01:03:40   19   History Category 1 with a resulting guideline range of life.

01:03:46   20           The objection, if sustained, would leave us with a

01:03:52   21   guideline range -- excuse me, a final offense level of 38, a

01:03:58   22   Criminal History Category 1 and a guideline range of 235 to

01:04:02   23   293 months, except for the fact there's a mandatory minimum of

01:04:06   24   20 years.  So it would leave with us a 240- to 293-month

01:04:12   25   guideline range.

| 01:04:13 | 1 | Is that consistent with the Government's understanding |
| 01:04:15 | 2 | of what's at play with this objection? |
| 01:04:20 | 3 | MR. GOLDBERG:  May I have the Court's indulgence for |
| 01:04:21 | 4 | one moment? |
| 01:04:22 | 5 | THE COURT:  Sure. |
| 01:04:54 | 6 | MR. GOLDBERG:  Did Your Honor say the total offense |
| 01:04:56 | 7 | level of 40 if the enhancement does not apply? |
| 01:05:01 | 8 | THE COURT:  I thought we were talking about a |
| 01:05:03 | 9 | five-level enhancement that would take it down to 38.  Am I |
| 01:05:07 | 10 | mistaken there? |
| 01:05:17 | 11 | Maybe I am, mathematically. |
| 01:05:21 | 12 | MR. GOLDBERG:  I think it would be 40, Your Honor, |
| 01:05:23 | 13 | most respectfully.  If we look at Document -- |
| 01:05:26 | 14 | THE COURT:  You're right.  I'm sorry.  I was -- you're |
| 01:05:29 | 15 | right.  It would have been a total offense level of 45, but |
| 01:05:34 | 16 | because the maximum is 43, that's where it is.  But without the |
| 01:05:38 | 17 | five-level, he would have an adjusted offense level of 43 minus |
| 01:05:42 | 18 | three for acceptance, so it would be a 40. |
| 01:05:45 | 19 | MR. GOLDBERG:  Yes, Your Honor, which would create a |
| 01:05:48 | 20 | guideline range of 292 to 365, I believe. |
| 01:05:51 | 21 | THE COURT:  292 to 365. |
| 01:05:54 | 22 | Okay.  With my mistake corrected, Mr. Lockhart, are |
| 01:05:57 | 23 | you in agreement? |
| 01:05:58 | 24 | MR. LOCKHART:  I do, Your Honor. |
| 01:05:59 | 25 | THE COURT:  Okay.  All right.  Then trying again to |

01:06:06   1   make sure everybody is on the same page here, my understanding,

01:06:10   2   Mr. Lockhart, your objection to the application of that

01:06:16   3   enhancement is not that the enhancement doesn't apply under --

01:06:24   4   factually under the circumstances here.  Your argument is that

01:06:28   5   it shouldn't apply because the definitions in the guideline are

01:06:37   6   improper; is that a fair summary?

01:06:39   7             MR. LOCKHART:  Just more specifically, what we're

01:06:42   8   saying is that if we look at the statute from which 4B1.5

01:06:47   9   originated from and we look at the specific definition in that

01:06:50  10   statute, for example, of what is a covered offense, that

01:06:54  11   definition, which is in the -- make sure I get this right --

01:06:58  12   Protection of Children from Sexual Predators Act of 1998, that

01:07:03  13   definition largely relates to six specifics offenses.

01:07:07  14             THE COURT:  All right.  Let me stop you.

01:07:09  15             MR. LOCKHART:  Okay.

01:07:10  16             THE COURT:  In my effort to try to simplify things, I

01:07:12  17   may have confused them.

01:07:14  18             MR. LOCKHART:  Okay.

01:07:15  19             THE COURT:  As I understand this guideline, it applies

01:07:18  20   when four things are present:  One, there has to be a covered

01:07:22  21   sexual offense, covered sex crime is the statutory -- or the

01:07:29  22   guideline words; number two, he's not a career offender;

01:07:34  23   number three, paragraph (a) of that guideline doesn't apply;

01:07:38  24   and, number four, there has to be a pattern of activity

01:07:42  25   involving prohibited sexual conduct.

01:07:45  1          Parties in agreement on that?  It's got to be those

01:07:48  2  four elements?

01:07:49  3          MR. LOCKHART:  I agree with that, Your Honor.

01:07:50  4          MR. GOLDBERG:  Yes, Your Honor.

01:07:51  5          THE COURT:  Okay.  Here, you're not contesting that as

01:07:58  6  to the first element, whether it's a covered sex crime, you're

01:08:02  7  not arguing that this offense, the child exploitation enterprise

01:08:06  8  offense, is not a covered sex crime as the guideline is

01:08:11  9  currently written, correct?

01:08:13  10          MR. LOCKHART:  That's correct, Your Honor.  My

01:08:14  11  argument is more set --

01:08:15  12          THE COURT:  Okay.

01:08:15  13          MR. LOCKHART:  -- on the fact that it's in the

01:08:16  14  commentary.

01:08:17  15          THE COURT:  Okay.

01:08:17  16          MR. LOCKHART:  And conflicts with this --

01:08:19  17          THE COURT:  And you're not arguing that he's a career

01:08:21  18  offender?

01:08:21  19          MR. LOCKHART:  No.

01:08:22  20          THE COURT:  And you're not arguing that 4B1.5(a)

01:08:27  21  applies?

01:08:27  22          MR. LOCKHART:  That's right, Your Honor.  Because for

01:08:28  23  the latter two, because he has no prior criminal history.

01:08:32  24          THE COURT:  Correct.

01:08:32  25          And then Number 4, you're not arguing that the two

01:08:37 1  occasions, two or more occasions, of production of child

01:08:44 2  pornography here does not meet the definition of pattern of

01:08:47 3  activity involving sexual -- prohibited sexual conduct.

01:08:52 4          MR. LOCKHART:  And that's also correct, Your Honor.

01:08:54 5          THE COURT:  Okay.  So what we really are talking about

01:08:57 6  is whether the Sentencing Commission on the first prong, covered

01:09:00 7  sex crime, whether they properly included child exploitation

01:09:06 8  enterprise into that definition, right?

01:09:08 9          MR. LOCKHART:  And production, yes, sir.

01:09:09 10         THE COURT:  Okay.  All right.  And then on the second

01:09:12 11 one, it's essentially the same argument that they overly defined

01:09:17 12 that term.

01:09:18 13         MR. LOCKHART:  Yes, that's basically correct.

01:09:20 14         THE COURT:  Okay.

01:09:20 15         MR. LOCKHART:  In terms of prohibited sexual activity.

01:09:23 16 So really, the arguments are the same because the statute is

01:09:25 17 essentially the same as to both, the way I see it.

01:09:28 18         THE COURT:  Okay.  All right.  So with that

01:09:31 19 understanding -- and hopefully not confusion of the record

01:09:35 20 trying to clarify it down -- I'm happy to hear the argument you

01:09:37 21 want to make.

01:09:38 22         MR. LOCKHART:  Okay.

01:09:39 23         THE COURT:  Either individually on the first element

01:09:40 24 and fourth element or collectively since it sounds like they

01:09:42 25 overlap.

01:09:43  1    MR. LOCKHART:  Thank you, Your Honor.

01:09:44  2    May I?

01:09:45  3    THE COURT:  Yes.

01:09:45  4    MR. LOCKHART:  Okay.  And as I kind of began, that is

01:09:48  5    the argument, Your Honor.  Essentially, what we're talking about

01:09:51  6    is that there were two primary statutes that were key in

01:09:57  7    creating what is now 4B1.5.  And when we're talking about this,

01:10:02  8    we're only talking about subsection (b), as the Court indicated.

01:10:06  9    He doesn't have a prior conviction, so only 4B1.5 subsection (b)

01:10:11  10   is really relevant here.

01:10:12  11       But when we look at the Protection of Children from

01:10:15  12   Sexual Predators Act of 1998, it's very, very specific in

01:10:19  13   relationship to that particular section of that statute that

01:10:27  14   resulted in the creation of 4B1.5 subsection (b).  And that

01:10:33  15   specific statute references six specific offenses, all from

01:10:38  16   Chapter 109 --

01:10:40  17       THE COURT:  Let me ask you a question.

01:10:42  18       MR. LOCKHART:  Okay.

01:10:42  19       THE COURT:  It's my understanding when that -- this

01:10:45  20   guideline, 4B1.5(b), was created in response to the

01:10:51  21   congressional act that you're talking about, the child

01:10:54  22   exploitation enterprise offense didn't exist; is that correct?

01:10:59  23       MR. LOCKHART:  Say that one more time, Your Honor.

01:11:00  24   I'm sorry.

01:11:01  25       THE COURT:  The guideline was amended -- or 4B1.5 was

01:11:07  1    added to the guidelines in 2001 pursuant to the direction of the

01:11:12  2    act that you're talking about, right?

01:11:14  3              MR. LOCKHART:  Yes, that's correct.

01:11:15  4              THE COURT:  My understanding is the child exploitation

01:11:18  5    enterprise offense that we're -- he's pled to here, didn't exist

01:11:24  6    until 2006.

01:11:29  7              MR. LOCKHART:  That's correct.

01:11:29  8              THE COURT:  Okay.  So why does the list in the 2018

01:11:32  9    act, why does that matter?

01:11:35 10              MR. LOCKHART:  Well, it matters because the problem

01:11:36 11    that we have here is that the bulk of what we're talking about

01:11:41 12    is what is a -- so I'll just talk about covered sex offense to

01:11:46 13    illustrate.

01:11:47 14              When you're talking about what is a covered sex

01:11:49 15    offense, that is defined in this specific statute that I'm

01:11:54 16    referencing, which I'll refer to as the PCSPA of 1998.  It's

01:11:59 17    very, very specifically defined in that statute as to six

01:12:03 18    specific offenses.  And it even references that the Commission

01:12:07 19    is to look at increasing the penalties as to those specific

01:12:12 20    offenses, none of those six specific offenses are listed in

01:12:15 21    Chapter 110, for example, which encompasses 2252A subsection

01:12:19 22    (g), which is what later came to be known as CEE, child

01:12:23 23    exploitation enterprise, or production under 2251.  Those are

01:12:28 24    both -- both those live in Chapter 110.

01:12:31 25              And the reason why this is relevant is because when we

01:12:34  1    look at what's in the actual text, not in the commentary but
01:12:39  2    what's in the text of 4B1.5, it specifically references "covered
01:12:43  3    sex offense."  And that is a specific -- so looking to see what
01:12:48  4    Congress intended with regard to what that means, we can see
01:12:52  5    specifically in Section 505 of the PCSPA how that's defined.

01:13:01  6         But what we have a particular problem with is that the
01:13:05  7    Commission, despite very, very clear language in that statute,
01:13:10  8    language that's so clear in relationship to those six offenses,
01:13:13  9    which do not include production and CEE, that there wasn't
01:13:17  10   anything for Congress to fill in, so to speak, or there's no
01:13:21  11   zone of ambiguity for Congress to add to that, Your Honor.

01:13:26  12        Just to finish the point, what they've done is --
01:13:30  13   meaning the Commission -- is from that piece of legislation,
01:13:34  14   they have expanded upon that definition, and -- but they've done
01:13:39  15   so only in the commentary.  They've fleshed out -- if not
01:13:42  16   only -- I don't even want to use the word "fleshed out" because
01:13:45  17   they've significantly expanded upon a definition that Congress
01:13:49  18   used in the PCSPA that's very clear and should have the effect
01:13:57  19   of law.  But the Commission expanded upon that and included a
01:14:00  20   whole host of other offenses including all of the Chapter 110
01:14:03  21   offenses with some exceptions, and that's a violation of
01:14:05  22   separation of powers and due process, I would --

01:14:09  23        THE COURT:  I think Mr. Goldberg's argument is
01:14:10  24   Congress told the Commission to do one thing, which is what
01:14:15  25   you're describing that told them to add specific offenses, but

01:14:20  1    it didn't -- that doesn't reflect a prohibition upon them doing

01:14:24  2    more than that.

01:14:26  3            What's your response?

01:14:27  4            MR. LOCKHART:  That would be correct if the language

01:14:29  5    of the statute that I'm talking about wasn't absolutely crystal

01:14:34  6    clear and that what they were asking the Commission to do was

01:14:38  7    modify the guidelines and create the equivalent of a guideline

01:14:42  8    that pertained to those six offenses only.

01:14:44  9            So that's where I get back to what I was saying

01:14:46  10   earlier, is that -- just that we don't have the language here as

01:14:49  11   to what relates to the text, which is a covered sex offense.

01:14:53  12   And when we look at that statute, it's very, very clear that it

01:14:57  13   only related to what Congress was asking the Commission to do,

01:15:01  14   was to amend the guidelines and increase the penalties regarding

01:15:04  15   those six specific offenses.

01:15:07  16           And so we just don't have the language that would then

01:15:09  17   allow the Commission to expand upon that.  And that's the

01:15:12  18   problem here.  And it's all in the commentary.  And so even

01:15:16  19   though the Government goes so far as to say, well, to a certain

01:15:19  20   extent, all of the commentary goes through the notice and

01:15:24  21   comment procedures.  But there are cases -- there's a Sixth

01:15:30  22   Circuit case, for example -- and specific statutory directives

01:15:34  23   with regard to what Congress is supposed to do in relationship

01:15:39  24   to the text of the guidelines.

01:15:41  25           And it's clear that even going through the notice and

01:15:44   1    comment procedures with the Commission, sending what their

01:15:48   2    proposed commentary is going to be to Congress, it doesn't put

01:15:51   3    Congress -- at least one Sixth Circuit case has found is that it

01:15:56   4    doesn't put Congress on notice.  They're not under the same

01:15:58   5    timelines, and they're not receiving the same notification with

01:16:01   6    regard to the commentary, and they're not necessarily paying

01:16:04   7    attention to it --

01:16:05   8         THE COURT:  Well, speaking of the Sixth Circuit, I

01:16:08   9    think Mr. Goldberg or the probation cited a *Hollon* case from

01:16:14  10    2020 that seems to find that this offense, the child

01:16:21  11    exploitation enterprise, is a covered offense under the

01:16:25  12    sentencing guideline.  Obviously, that case isn't binding upon

01:16:29  13    me --

01:16:29  14         MR. LOCKHART:  That's right.

01:16:29  15         THE COURT:  -- but do you agree that it forecloses

01:16:31  16    your -- if this was an Eleventh Circuit case, if the Eleventh

01:16:33  17    Circuit had ruled this way, would you have the argument you're

01:16:36  18    making?

01:16:37  19         MR. LOCKHART:  Yes, because no one's ever raised this

01:16:40  20    argument anywhere.  No one has ever specifically challenged what

01:16:43  21    is a covered sex offense.  And the fact that if you look at the

01:16:46  22    1998 legislation, it includes very explicitly only six specific

01:16:51  23    offenses that don't reference at all any Chapter 110 offenses.

01:16:55  24         I think that *Hollon*, frankly, when it talks about the

01:17:00  25    Adam Walsh Act, there's a section in the Adam Walsh Act where

01:17:04  1    the Adam Walsh Act added -- wanted to increase the penalties of

01:17:10  2    a specific piece of legislation, which is 18 U.S.C. 1519.  I

01:17:14  3    believe it relates to child sex trafficking.  And even in that

01:17:19  4    specific section of the Adam Walsh Act, it doesn't say anything

01:17:22  5    to the Commission about, Hey, go ahead and add this to what is a

01:17:26  6    covered sex offense under 4B1.5 subsection (b).  So all these --

01:17:31  7    so while I do note --

01:17:33  8                THE COURT:  Does it have to, I guess, is --

01:17:36  9                MR. LOCKHART:  Well --

01:17:36  10               THE COURT:  I mean, there's other --

01:17:37  11               MR. LOCKHART:  That's right.

01:17:37  12               THE COURT:  -- provisions of the Commission's enabling

01:17:40  13   statute that essentially tell it to do what you need to do to

01:17:43  14   establish guidelines.  And so why couldn't they rely upon that

01:17:46  15   authority -- even if you're right --

01:17:49  16               MR. LOCKHART:  That's right.

01:17:49  17               THE COURT:  -- back in 2001, they should not have

01:17:51  18   included Chapter 110 in part of the -- defined that term to

01:17:59  19   include offenses in Chapter 110.  Why couldn't they have done

01:18:03  20   that later on when this statute that we're talking about took

01:18:08  21   effect pursuant to their general authority?

01:18:10  22               MR. LOCKHART:  Well, they could, but -- well, I would

01:18:12  23   submit they only can if the language of the statute directs them

01:18:17  24   to do something where it's reasonable for them to expand upon it

01:18:22  25   or fill in what Congress is already asking them to do.

01:18:26  1          And when we read *Kisor*, and even to a certain extent

01:18:29  2    the *Chevron* decision, the Sentencing Commission just doesn't

01:18:35  3    have the ability to take a very specific piece of legislation,

01:18:38  4    like this 1998 piece of legislation that ultimately was linked

01:18:41  5    and was integral in creating what is a covered sex offense, and

01:18:45  6    just expand on it --

01:18:46  7          THE COURT:  Well, I guess --

01:18:46  8          MR. LOCKHART:  -- regardless of the language of the

01:18:47  9    statute.

01:18:48 10          THE COURT:  To me that's a different argument.  You

01:18:50 11    know, if we're sitting in 2006, Congress adopts this child

01:18:56 12    exploitation enterprise, at that particular moment why doesn't

01:19:01 13    the Commission have the authority, pursuant to its general

01:19:06 14    authority, to establish guidelines related to that offense?

01:19:10 15          MR. LOCKHART:  It does, but it has to do it in

01:19:12 16    relationship to -- this is the difference -- the crux of my

01:19:17 17    argument is that the differences in what's in the text versus

01:19:21 18    what's in the commentary.  And the text was it directly relates

01:19:25 19    to what Congress has approved, which is the subject matter of

01:19:29 20    the -- of Section 505 of that piece of legislation from 1998.

01:19:34 21          What the Commission does despite that very clear

01:19:37 22    language from 1998 is they expand on the definition of what is a

01:19:42 23    covered sex offense.  And while the Government wants to say that

01:19:43 24    it's reasonable and that it's within the normal expertise of the

01:19:48 25    agency to be able to do so, what the court says in *Kisor* --

| | |
|---|---|
| 01:19:51 | 1 |
| 01:19:56 | 2 |
| 01:19:58 | 3 |
| 01:20:04 | 4 |
| 01:20:08 | 5 |
| 01:20:11 | 6 |

01:19:51  1   Gorsuch's opinion, for example, in *Kisor* says there's limits to

01:19:56  2   what the Commission can do.  And the number one rule is, if

01:19:58  3   there's not any ambiguity, the Sentencing Commission or an

01:20:04  4   agency cannot add to that specific clear language, because where

01:20:08  5   you don't have any ambiguity, what's in that 1998 statute in

01:20:11  6   Section 505 --

01:20:13  7            THE COURT:  Again, I don't -- I'm still --

01:20:14  8            MR. LOCKHART:  -- has the force of law.

01:20:14  9            THE COURT:  -- not understanding why the 1998 statute

01:20:17  10  applies once we get to 2006.  I mean, I get your argument that

01:20:21  11  back in 1998 or 2001 when they adopted it, they had a statute

01:20:25  12  from Congress telling them for six specific offenses, enhance

01:20:30  13  the penalties.  And I understand your argument that they went

01:20:34  14  beyond that and added other things that they enhanced the

01:20:38  15  penalties to --

01:20:39  16           MR. LOCKHART:  Because it --

01:20:40  17           THE COURT:  -- but we move on to 2006.  Congress has

01:20:42  18  passed a new statute.  Why can't at that point the Commission

01:20:48  19  say, We think in our wisdom and authority, we think that this

01:20:55  20  new statute deserves enhanced penalties; and so at this point,

01:20:59  21  we're going to expand the definition or reaffirm the expansion

01:21:04  22  that we improperly did, arguably, to apply it to this new

01:21:10  23  statute?

01:21:11  24           MR. LOCKHART:  Because when you look at the Adam Walsh

01:21:12  25  Act with regard to the language, the specific language of 15 --

01:21:16    1    I think it's 1591, is a sex trafficking statute -- it doesn't

01:21:21    2    say anything about -- there's nothing in the language of the

01:21:27    3    Adam Walsh Act with regard to that specific section that says

01:21:31    4    anything other than that they want the penalties of that section

01:21:34    5    increased.

01:21:36    6          There's nothing in particular that would give anyone,

01:21:39    7    including the *Hollon* Court out of the Sixth Circuit, the ability

01:21:44    8    to conclude that Congress gave the okay, even with that one

01:21:49    9    piece of legislation or that one section in the Adam Walsh Act

01:21:53   10    from 2006, it doesn't give the Commission the ability to go back

01:21:56   11    and now completely redefine what is a covered sex offense from

01:22:00   12    1998.  There's literally just a few sentences in the Adam Walsh

01:22:05   13    Act about that specific piece of legislation being the statute,

01:22:08   14    1591.  There's very, very little language about that.  It

01:22:12   15    largely just instructs the Commission to increase the penalties.

01:22:15   16          So what I'm talking about here is just another example

01:22:18   17    of how the Commission in the commentary is running with all

01:22:21   18    these expansive definitions, and it's never getting in the text.

01:22:25   19    There's none of this that's rooted in the text and with any

01:22:28   20    foundation in the actual statute.

01:22:30   21          So I totally agree with the Court that there's no

01:22:32   22    question that the *Hollon* court from 2000 in a few sentences

01:22:38   23    noted that in a different argument regarding 4B1.5 that they

01:22:43   24    believe that Congress -- or that there's some indication that

01:22:48   25    Congress added 1591 through the Adam Walsh Act.

01:22:51  1        I disagree, though, that that means that that would

01:22:55  2   give the Commission the ability to go back and completely

01:22:59  3   redefine what is a covered sex offense when they didn't have the

01:23:04  4   ability to do it in 1998.  We're still dealing with the same

01:23:07  5   piece of legislation.  It's still directed as law with the same

01:23:10  6   definitions, which would be the original six offenses from

01:23:12  7   Chapter 109A and 117.

01:23:15  8        THE COURT:  So your view is without a specific

01:23:19  9   directive from Congress in 2006 saying, Commission, adopt

01:23:29  10  guidelines or amend guidelines as necessary to have enhanced

01:23:35  11  penalties for child exploitation enterprise, the Commission

01:23:42  12  couldn't do what they implicitly did in the definitions in

01:23:53  13  4B1.5?

01:23:54  14       MR. LOCKHART:  I would say that there would have to

01:23:55  15  be -- in the language of the statute coming from Congress that

01:23:59  16  there would have to be some indication that that would be --

01:24:03  17  that what the Commission ultimately did is reasonable.

01:24:06  18       And what I'm saying to this Court is that when I read

01:24:09  19  that one little provision of the Adam Walsh Act from 2006 where

01:24:13  20  it references increasing the statutory penalties for 1591, I

01:24:17  21  don't read that as reasonable or within the zone of ambiguity

01:24:21  22  for the Commission to go back and rewrite what is a covered sex

01:24:24  23  offense.  I just don't see it.  And that's the problem because

01:24:26  24  they're doing this in the commentary, none of it's in the text,

01:24:29  25  and so you can go through the notice and comment process, but

01:24:33  1    there's no focus on what's in the commentary.  It doesn't get

01:24:36  2    the same level of scrutiny as what's in the text.

01:24:40  3           And so it would essentially allow -- any time

01:24:43  4    Congress -- if what the Government is asserting is law, it would

01:24:49  5    essentially allow the Commission at any time point in time to go

01:24:52  6    back in the commentary.  Any time there is any kind of

01:24:55  7    definition that would allow the most expansive interpretation of

01:24:58  8    what the congressional piece of legislation is to go back and

01:25:01  9    completely rewrite the law in the commentary and, guess what,

01:25:06  10   that's exactly what they're doing and that's what --

01:25:08  11        THE COURT:  I don't know the answer to this question

01:25:09  12   except for the fact that the Commission could not do anything

01:25:12  13   right now because it doesn't have a quorum.  But assuming they

01:25:17  14   had a quorum and could adopt guidelines, Congress passes a new

01:25:21  15   statute creating a new crime, what degree of delegation do you

01:25:26  16   think is necessary before the Commission can act to establish

01:25:31  17   guidelines related to that crime?

01:25:33  18        MR. LOCKHART:  I think -- well, and there is, I

01:25:36  19   believe, a section in the statute which is, I think, 944,

01:25:40  20   there's some direction there.  But looking at cases like *Chevron*

01:25:45  21   and looking at cases like *Kisor*, looking at cases like *Seminole*

01:25:49  22   *Rock*, it's very clear that the very first roadmap indicator is

01:25:59  23   whether or not Congress's language is ambiguous or not.

01:26:03  24        THE COURT:  Right.  In my example, they just passed a

01:26:04  25   statute:  It's hereby unlawful to root for the Florida Gators --

01:26:07  1    good statute, by the way -- but that's all it says.  The

01:26:16  2    Commission, your argument would be they would have no authority

01:26:19  3    to establish what the guideline ranges are to determine whether

01:26:23  4    enhanced penalties should be associated with that?

01:26:25  5         MR. LOCKHART:  Well, I think that's a much more basic

01:26:27  6    example.  I think, honestly, the devil's in the details.  And I

01:26:30  7    think the problem with these cases and what many of the judges

01:26:32  8    had a problem with which resulted in *Kisor* is that the devil is

01:26:37  9    in the details.  That's why they're talking about statutory

01:26:40  10   interpretation.  That's why they're talking about whether or not

01:26:42  11   there's any ambiguity.  And the very -- Question Number 1 is

01:26:45  12   what?  That's -- it looks specifically at what the language is

01:26:48  13   to see whether or not there's any ambiguity.  And if there's no

01:26:52  14   ambiguity, it has the force of law.

01:26:54  15        THE COURT:  Right.  I guess my example was very

01:26:56  16   tongue-in-cheek, but it's not too far off.  I mean, Congress in

01:27:01  17   that Adam Walsh Act, which the particular statute we're talking

01:27:05  18   about here, 2252A(g), is two paragraphs long, and it tells us

01:27:15  19   what the crime is.

01:27:19  20        MR. LOCKHART:  The section that I have, which is the

01:27:21  21   Adam Walsh Child Protection and Safety Act --

01:27:24  22        THE COURT:  I'm looking at the creation of paragraph

01:27:26  23   (g) that created that particular crime.  I know there are other

01:27:32  24   components of the Act --

01:27:33  25        MR. LOCKHART:  Okay.

01:27:33   1          THE COURT:  -- but they passed the statute that said

01:27:35   2   here is a new crime that before now did not exist.

01:27:39   3          What additional directive do you think is necessary

01:27:42   4   before the Commission can adopt any guidelines?

01:27:45   5          MR. LOCKHART:  Well --

01:27:45   6          THE COURT:  I understand the argument you may take

01:27:47   7   issue with certain components of the guidelines being implied or

01:27:51   8   expanded, but I'm just trying to figure out what would Congress

01:27:54   9   have had to say before they can even get into the guidelines for

01:27:57  10   an entirely new crime.

01:27:59  11          MR. LOCKHART:  Well, what -- more fundamentally, what

01:28:02  12   I would say is even if that did allow the Commission to add 1591

01:28:06  13   based on that specific language of the Adam Walsh Act, it

01:28:10  14   wouldn't allow them to include Chapter 110 offenses which would

01:28:12  15   include production and CEE.

01:28:14  16          How would that allow -- any particular statute, the

01:28:17  17   creation of a new criminal statute of 1591, how would that allow

01:28:21  18   the Commission in the commentary to expand what is a covered sex

01:28:24  19   offense back from when the definition has been very clear since

01:28:26  20   1998, Congress had the ability to define that and express that

01:28:31  21   that's what they wanted to do.  They're not anywhere close to

01:28:33  22   that when we look at the specific language from 1998, of course,

01:28:35  23   it references just those six offenses.

01:28:37  24          So even if we wanted to assume that later they added

01:28:40  25   one, which there's no indication in the language of the Adam

01:28:42  1   Walsh Act that they did, that still doesn't help the Government

01:28:46  2   in any way because we still have the Commission, if that was

01:28:49  3   their stated basis for doing this, still doesn't allow the

01:28:52  4   Commission to be able to ignore the very clear language that it

01:28:55  5   relates to those six -- or maybe, now, seven -- offenses and to

01:28:58  6   completely rewrite it in the commentary which doesn't receive

01:29:02  7   the same scrutiny from Congress.

01:29:05  8            THE COURT:  And I know we've been focused on the

01:29:09  9   covered sex crime, the first of the four prongs necessary for

01:29:13  10  this to apply.  Is your argument any different -- as I

01:29:17  11  understand it, you have three arguments:  One, it's not a

01:29:20  12  covered sex crime or it's improperly -- that definition has been

01:29:25  13  improperly expanded; secondly, the definition of "pattern of

01:29:28  14  activity involving prohibited sexual conduct" has been

01:29:31  15  improperly expanded; and your third argument, I think, was

01:29:34  16  something to do with double counting.

01:29:37  17            MR. LOCKHART:  That's correct.  The third argument is

01:29:39  18  essentially --

01:29:39  19            THE COURT:  Before we get to that --

01:29:41  20            MR. LOCKHART:  I'm sorry.

01:29:43  21            THE COURT:  -- is there any additional or different

01:29:44  22  argument you want to make on your second point?

01:29:48  23            MR. LOCKHART:  The second point is essentially the

01:29:49  24  same.  Because what we're doing is we're looking at, still,

01:29:52  25  Section 505 of this same piece of legislation from 1998 which

01:29:56  1   references the same six offenses.  And so to the extent that --

01:30:00  2   I think that fundamentally is the same.  There's just no

01:30:04  3   language or subsequent amendments anywhere that would give the

01:30:08  4   Commission the ability to so expansively redefine what is a

01:30:12  5   covered sex offense.

01:30:14  6          THE COURT:  Let me ask you this because, I think,

01:30:15  7   those -- to me, those are two completely different arguments,

01:30:18  8   and I'm not sure I follow your second argument.

01:30:22  9          I understand your argument that when the Commission --

01:30:26  10  when the Commission uses the word "covered sex crimes," it

01:30:30  11  shouldn't have gone anywhere beyond the six offenses listed in

01:30:34  12  the 2018 act.

01:30:36  13         Is that a fair summary of that argument?

01:30:38  14         MR. LOCKHART:  Yes, Your Honor.

01:30:40  15         THE COURT:  But when I read that paragraph 2 of

01:30:43  16  Section 505, it tells the Commission upon completion of its

01:30:47  17  review, they -- "You are to do increased penalties for those

01:30:56  18  six offenses" -- except in your argument -- "for those six

01:30:59  19  offenses in any case where the defendant has engaged in a

01:31:02  20  pattern of activity involving the sexual abuse and exploitation

01:31:05  21  of a minor."

01:31:06  22         That latter phrase seems to be undefined and open to

01:31:12  23  interpretation.  So why isn't the interpretation placed on it by

01:31:16  24  the Commission a reasonable one?

01:31:18  25         MR. LOCKHART:  Because it would have to relate to

01:31:21  1   however they want to define what is a pattern of activity.  They

01:31:24  2   can define that however they want, but it would have to relate

01:31:27  3   strictly to those six offenses.  That's how I read the statute,

01:31:31  4   because they continually reference subsection (1) which lists

01:31:35  5   those specific six offenses.

01:31:37  6       So they're essentially saying, You can increase the

01:31:40  7   penalties, but also, you can draft up -- you can increase the

01:31:46  8   penalties applicable to the offenses referenced in paragraph 1

01:31:48  9   in any case where there is a pattern of activity involving such

01:31:51 10   and such.

03:07:32 11       So what I'm saying is, we never get outside of those

01:31:55 12   six offenses, as I read it.

01:31:57 13       THE COURT:  So your interpretation of "pattern of

01:31:59 14   activity" is that it's got to be an activity in one of those six

01:32:06 15   offenses?

01:32:07 16       MR. LOCKHART:  Yes.

01:32:08 17       THE COURT:  Okay.  All right.  Any additional argument

01:32:13 18   you want to make on that point?

01:32:15 19       MR. LOCKHART:  No, Your Honor.

01:32:15 20       THE COURT:  And then your third point on double

01:32:17 21   counting, I guess my question is -- I understand the argument,

01:32:20 22   but why isn't that argument foreclosed by the *Rogers* case that

01:32:24 23   Mr. Goldberg cited?

01:32:27 24       MR. LOCKHART:  Because I don't know that the *Rogers*

01:32:31 25   case addresses our specific facts.  And here, the issue is that,

01:32:36 1   from my standpoint, we have double counting 100 percent of the
01:32:41 2   time where we have an individual charged with CEE and
01:32:45 3   production.  And so where you have an individual like
01:32:51 4   Mr. McClure, who has supposedly taken roughly 38 organic photos
01:32:56 5   at different times in July, that is the basis in the presentence
01:33:02 6   report for applying this adjustment.  And that also overlaps
01:33:07 7   specifically with the elements of CEE where one of the
01:33:12 8   predicates, so to speak, in the CEE offense is that you have
01:33:19 9   committed a series of offenses.  And the Government wants to
01:33:22 10  argue that the -- that 4B1.5 essentially takes into account
01:33:31 11  things other than what the enterprise related to.

01:33:34 12          But from my perspective, it is duplicative because the
01:33:39 13  CEE statute by itself, inherently the elements relate to a
01:33:45 14  series or repeat pattern of behavior.  The base offense level in
01:33:48 15  2G2.6 is built into that at offense level 35 with a 20-year
01:33:52 16  mandatory minimum.  And so it just strains credibility and
01:33:57 17  respect for the law to assert that there's any other rationale
01:34:01 18  for 4B1.5 in my opinion.  But I do think it's a 100 percent
01:34:07 19  duplicative in cases where you have production, and that is
01:34:08 20  Mr. McClure's case.

01:34:10 21          THE COURT:  And in the *Rogers* case, as I read it,
01:34:16 22  the -- and maybe I'll ask Mr. Goldberg this -- that the court
01:34:22 23  said there's two things that are necessary to overcome double
01:34:27 24  counting or two circumstances in which double counting is
01:34:29 25  permitted.  One, when the Commission intended that result -- and

01:34:35  1    do you contend here that the Commission did not intend that

01:34:39  2    result?

01:34:39  3              MR. LOCKHART:  I think that there is a question as to

01:34:40  4    whether or not they've intended that result.  I think --

01:34:43  5              THE COURT:  Well, let me try it a different way.

01:34:45  6              Do you agree that the Eleventh Circuit's opinion

01:34:47  7    forecloses that argument?

01:34:53  8              MR. LOCKHART:  I don't know that it matters, frankly,

01:34:56  9    because it's not on all fours with the facts of Mr. McClure's

01:35:00 10    case involving production.

01:35:02 11              THE COURT:  Okay.  All right.  Well, I'll not bury the

01:35:06 12    lead on that one.  The Eleventh Circuit forecloses that

01:35:08 13    argument.  It clearly says in -- 4B1.5 is perfectly clear that

01:35:13 14    you're to add those points in addition to everything you did in

01:35:18 15    two and three.  So that part of it, Eleventh Circuit's clearly

01:35:22 16    answered.

01:35:22 17              But what is not clear to me that the Eleventh

01:35:26 18    Circuit's opinion went further and answered the second prong of

01:35:30 19    that in determining in that particular guideline whether there

01:35:35 20    were conceptually separate notions related to sentencing.  And

01:35:40 21    so I think that portion of your argument probably is not

01:35:43 22    foreclosed by this opinion for two reasons:  One, because a

01:35:47 23    different guideline provision was involved, not the CEE

01:35:53 24    guideline provision; and secondly, as I read the court's

01:35:57 25    opinion, they just stop their analysis after the first prong.

| | | |
|---|---|---|
| 01:36:01 | 1 | So in the event, maybe Mr. Goldberg can convince me |
| 01:36:05 | 2 | I'm wrong but certainly his argument is going to be that when |
| 01:36:08 | 3 | you then go back into *Hollon*, it talks about the purpose of the |
| 01:36:13 | 4 | CCE enhancement is the enterprise nature of it; whereas the |
| 01:36:22 | 5 | purpose of the four-point -- I didn't say that right.  The |
| 01:36:27 | 6 | purpose of the higher guideline for CCE is the enterprise nature |
| 01:36:32 | 7 | of it; the purpose of the 4B enhancement is the sexual offense |
| 01:36:39 | 8 | involved. |
| 01:36:40 | 9 | So what's your response to that argument, assuming I |
| 01:36:42 | 10 | characterized it correctly? |
| 01:36:45 | 11 | MR. LOCKHART:  Well, I would want to hear what the |
| 01:36:46 | 12 | Government has to say, I guess. |
| 01:36:48 | 13 | THE COURT:  Okay.  I'll give you a chance after -- |
| 01:36:49 | 14 | MR. LOCKHART:  -- to the extent I'm following the |
| 01:36:50 | 15 | Court's argument.  But I think, too, in relationship to Point |
| 01:36:54 | 16 | Number 1, it's unclear to some extent what the Sentencing |
| 01:36:57 | 17 | Commission was doing, because 4B1.5 is just genuinely inherently |
| 01:37:01 | 18 | odd in the sense that they've got what is the equivalent of a |
| 01:37:04 | 19 | specific offense level adjustment in 4B1.5 subsection (b), which |
| 01:37:08 | 20 | is titled under Criminal History and Recidivism, which would |
| 01:37:10 | 21 | certainly relate to 4B1.5 subsection (a), which relates to prior |
| 01:37:15 | 22 | convictions. |
| 01:37:16 | 23 | And like the Court pointed out, we had a 4B1.5 that's |
| 01:37:20 | 24 | been around for a while; but then we get 2G2.6 for CEE which |
| 01:37:26 | 25 | doesn't have that specific offense characteristic.  And then |

01:37:29  1   when we look at the statistics, we don't see 4B1.5 subsection

01:37:33  2   (b) being applied in but half the cases.  And it's just

01:37:38  3   extremely unusual, and of course the results are enormously --

01:37:43  4   they result in, you know, enormously different outcomes.

01:37:45  5         And so in terms of -- I realize that the case law

01:37:48  6   which I take great issue with essentially says, Well, if the

01:37:52  7   Commission didn't somewhere in the guidelines put there that it

01:37:57  8   would be considered double counting, then we're to assume that

01:37:59  9   they intended it, and I just submit that that's really not a

01:38:03 10   standard at all.

01:38:04 11         THE COURT:  Okay.  You can tell that to the Eleventh

01:38:05 12   Circuit.  I have to listen to what they said on that point.

01:38:08 13         All right.  Mr. Goldberg?

01:38:15 14         MR. GOLDBERG:  With the Court's indulgence, can we

01:38:17 15   back it all the way up to the train station, because I think

01:38:21 16   before we bullet-train out into some of those what now appear to

01:38:26 17   be fluid arguments of the defense, I do want to look at the Act

01:38:31 18   itself.  Because the defense is just focusing on 505

01:38:35 19   subsection (1), the six offenses.  Right?  But as the Court

01:38:40 20   points out, there's a 505 Section 2, and the defense doesn't

01:38:43 21   want to address that.  They want the Court to excise that, which

01:38:46 22   you can can't, respectfully, because Congress wrote it.

01:38:49 23         And it specifically directed the Commission to

01:38:53 24   promulgate the amendments to the Federal Sentencing Guidelines

01:38:56 25   to increase penalties applicable to those offenses, quote, "In

01:39:00  1    any case in which the defendant engaged in a pattern of activity

01:39:04  2    involving the sexual abuse or exploitation of a minor," end

01:39:08  3    quote.  That is Section 505(2) written by Congress, not the

01:39:13  4    Sentencing Commission.

01:39:14  5            At the time that was written -- because obviously the

01:39:18  6    act didn't define sexual abuse or exploitation of a minor.  But

01:39:23  7    at that time, that phrase, "sexual abuse or exploitation of a

01:39:27  8    minor" was in 2G2.2 already, which is child pornography

01:39:31  9    offenses.  It did already exist.  And that's at the time of the

01:39:35  10   writing, right?  So that's before you even get to the Adam Walsh

01:39:38  11   Act, which I think was July of 2006.  This was at that time.

01:39:41  12   That phrase existed.

01:39:43  13           And what the defense wants this Court to bite off on,

01:39:46  14   and I think it bears noting because the defense, respectfully,

01:39:49  15   my adversary, cites no case law in support of its position,

01:39:53  16   right, because there is none.  They're asking you to make law

01:39:57  17   today.  But even 505, there's nothing that suggests that those

01:40:01  18   six offenses in 505 subsection (1) is meant to be exclusive or

01:40:06  19   exhaustive.

01:40:07  20           THE COURT:  All right.  Well, I think you're getting

01:40:12  21   apples and oranges in the same basket here.

01:40:17  22           I tend to agree with your argument on the fourth prong

01:40:22  23   here -- what I've call the fourth prong -- the definition of

01:40:25  24   "pattern of activity involving prohibited sexual contact."

01:40:27  25   That's a completely separate gloss that Congress has laid out

01:40:37  1   there.  If you accept -- well, let me ask this:  Would you agree

01:40:41  2   that a reading of the statute 505(2) is telling the Commission

01:40:46  3   to promulgate amendments for those six covered offenses giving

01:40:51  4   them enhanced penalties in any case where you have the pattern

01:40:55  5   of activity?

01:40:57  6            MR. GOLDBERG:  In any case where there is a pattern of

01:40:59  7   activity, then with the rest of that sentence, yes.

01:41:02  8            THE COURT:  But it's got to be one of those six

01:41:03  9   offenses that has that pattern involved.  It doesn't have to

01:41:06  10  be -- the pattern doesn't have to be one of those six offenses,

01:41:09  11  but only in those six offenses is when the Sentencing Commission

01:41:13  12  was told.  I know you have an argument that they can do things

01:41:18  13  they weren't told to do pursuant to other authority, but doesn't

01:41:21  14  this statute tell them:  For these six offenses we've listed in

01:41:26  15  subsection (1), we want enhanced penalties when there is also a

01:41:31  16  pattern of -- the defendant also had a pattern of doing this --

01:41:35  17  or doing something?

01:41:37  18            MR. GOLDBERG:  Respectfully, I don't think that's the

01:41:38  19  plain reading of it.

01:41:39  20            THE COURT:  Okay.

01:41:40  21            MR. GOLDBERG:  So maybe that's where we're in

01:41:41  22  disagreement.

01:41:42  23            THE COURT:  Okay.  Because it seems to me your

01:41:43  24  argument that the phrase "pattern of activity involving the

01:41:48  25  sexual abuse or exploitation of a minor" is a broader set of

01:41:53  1    activities.  It's not necessarily six offenses; it's the myriad

01:41:57  2    of offenses that include exploiting and harming minors.  So any

01:42:03  3    of those offenses that the defendant engaged in, whether they're

01:42:07  4    one of those six or not, counts for purposes of the fourth prong

01:42:13  5    of this statute, pattern of activity, but we still have the

01:42:16  6    concern Mr. Goldberg's raising --

01:42:18  7              MR. GOLDBERG:  Mr. Lockhart.

01:42:19  8              THE COURT:  Mr. Lockhart's raising that the only time

01:42:23  9    that you would even get to the question of what did the

01:42:26 10    defendant do previously, or presently, is when it was one of the

01:42:30 11    six, that they should have never included Chapter 110 and, thus,

01:42:35 12    never included CEE.  To me those are two separate arguments.

01:42:39 13    One of them is less persuasive, the latter; one of them has at

01:42:44 14    least colorable merit to it.

01:42:46 15              And so I'm with you on pattern of activity.  You can

01:42:49 16    convince me to not be with you on that, but I'm really still

01:42:53 17    struggling with whether a covered sex crime is just the six that

01:42:57 18    they told them to add or whether it can be other things as well.

01:43:00 19              MR. GOLDBERG:  And it's the Government's position, it

01:43:02 20    could be others as well.

01:43:03 21              THE COURT:  And how do I get there?

01:43:05 22              MR. GOLDBERG:  Because if you read -- because of the

01:43:06 23    expansive language of 505(1) and (2) read together.  You don't

01:43:11 24    just read one part of the statute and not the rest.  And then we

01:43:16 25    also see it in binding -- I think binding, or at least

01:43:21  1    instructive -- case law in the production.  I mean, the Eleventh

01:43:24  2    Circuit has applied this in production cases which is also at

01:43:27  3    110 offense.  So we do already have that.

01:43:31  4            So what I'm -- I guess --

01:43:32  5            THE COURT:  Well, let me ask you this:  In that case,

01:43:35  6    they may have applied it here.  Mr. Goldberg's not arguing

01:43:38  7    that --

01:43:39  8            MR. GOLDBERG:  Mr. Lockhart.

01:43:40  9            THE COURT:  Doggone it.  I'm going to get it right.

01:43:41  10           Mr. Lockhart is not --

01:43:41  11           MR. GOLDBERG:  I've been called a lot worse, Your

01:43:43  12   Honor.

01:43:43  13           THE COURT:  Mr. Lockhart is not arguing that this is

01:43:47  14   not an offense that falls within Chapter 110, just like the

01:43:52  15   production offense in the case you're referring to didn't fall

01:43:55  16   within Chapter 110.  But the case would only be binding as to

01:44:00  17   this argument if they considered the question of whether 110

01:44:05  18   should have ever been in there to begin with, and did they?

01:44:08  19           MR. GOLDBERG:  No, I agree with that.

01:44:09  20           THE COURT:  Okay.

01:44:10  21           MR. GOLDBERG:  I agree with that.  But what the

01:44:11  22   defense is asking you to do is essentially ignore a phrase.  I

01:44:19  23   understand the phrase "pattern activity," but prior to that, the

01:44:22  24   phrase is "in any case."  It doesn't say "in any case involving

01:44:27  25   the six offenses listed in subsection (1)."  It just doesn't say

01:44:31  1    that.  And the defense is asking you to read that in to

01:44:35  2    Section 505.  It does not say that.  It says "in any case."  And

01:44:40  3    all the following language is just that:  It's following.

01:44:43  4         It says "in any case in which the defendant engaged in

01:44:47  5    a pattern of activity involving the sexual abuse or

01:44:50  6    exploitation."  It doesn't say "in any case involving that which

01:44:53  7    is in subsection (1) or the six offenses below" -- or "above."

01:44:56  8    The defense is asking you to read words into a statute that

01:45:00  9    don't exist.

01:45:02  10        THE COURT:  Okay.

01:45:06  11        MR. GOLDBERG:  And that -- we see that, and that's why

01:45:10  12   the Government cited *Smith* and *Pridgeon*.  Because under 994,

01:45:17  13   these types of things have happened before.  They were just in

01:45:21  14   controlled substance offense-related cases.  There's nothing

01:45:22  15   exclusive or exhaustive of 505(1) because 505(2) exists.  And

01:45:29  16   what the Government's requesting of the Court is not to read

01:45:31  17   words into a statute that don't exist.

01:45:34  18        THE COURT:  Assume I disagree with you.  Assume that I

01:45:39  19   interpret 505(1) and (2) collectively to say the Commission was

01:45:44  20   directed to increase penalties for those six offenses when there

01:45:52  21   was also this pattern of activity going on.  Assume that's what

01:45:57  22   I agree with you.  And so in 2001, it was improper for the

01:46:01  23   Commission to take it upon itself to add additional offenses to

01:46:08  24   the definition of covered sex offense.

01:46:14  25        How does the fact that the Congress enacted this

01:46:18   1   particular statutory offense in 2006 and the guidelines were

01:46:23   2   later amended, how does that play into this, if at all?

01:46:28   3        MR. GOLDBERG:  Well, the Commission has the authority

01:46:29   4   to do things like that.  Otherwise, as I believe the Court

01:46:33   5   intimated earlier, every time a statute would be passed, the

01:46:36   6   Commission would just be dead.  There would be no ability to

01:46:39   7   create guidelines or comment on guidelines until another

01:46:44   8   convening or submission to Congress, right?  I think that's what

01:46:46   9   the Court was getting at with the Florida Gator scenario.

01:46:50   10        So if this is read to be -- if 4B1.5, the Court finds

01:46:56   11   it to be ambiguous, even under *Kisor*, you would defer to the

01:47:02   12   commentary.  It's still covered.  Either way you look at it, CEE

01:47:06   13   and production are covered.

01:47:09   14        THE COURT:  I'm just wondering if in 2001, the

01:47:12   15   Commission did more than it should have.  And if you accept that

01:47:18   16   premise, which I know you don't, but if you accept that premise,

01:47:21   17   then Congress passes a new statute, and the Commission has to

01:47:24   18   figure out what to do with that statute.  And what I was trying

01:47:28   19   to explore with Mr. Lockhart was what did the Commission need --

01:47:33   20   what did the Congress need to say to allow the Commission to

01:47:37   21   make a determination in its expertise that we want to add this

01:47:43   22   new offense to 4B1.5?

01:47:49   23        Assume they didn't in 2001 when they adopted 4B1.5,

01:47:56   24   they just did exactly what Mr. Lockhart said.  It's just these

01:48:01   25   six offenses and there also being this pattern of activity, that

01:48:07  1   that's when this would apply.  Assume that's all it said.  And

01:48:10  2   then Congress passes the Adam Walsh Act, they adopt this new

01:48:13  3   crime, and the Commission says, You know what?  That should get

01:48:17  4   enhanced penalties, too.  And so they add -- by adding Chapter

01:48:21  5   110, they suck it into that.

01:48:26  6         Would that have been proper, and what authority would

01:48:29  7   they have done it?  What do you understand the argument to be

01:48:32  8   why they couldn't do it at that point?

01:48:35  9         MR. GOLDBERG:  Well, I have to state with all due

01:48:37  10  candor that wasn't briefed, so I didn't prepare for that

01:48:41  11  argument.  I just don't have an answer that I want --

01:48:43  12        THE COURT:  Wouldn't that what, kind of, *Hollon* was

01:48:44  13  talking about?

01:48:46  14        MR. GOLDBERG:  Well, *Hollon* addressed exactly what the

01:48:48  15  Government cited it for, and I think the Court already -- maybe,

01:48:53  16  I misunderstood just what the Court was trying to ask me, but as

01:48:56  17  the Government wrote in Document 42, *Hollon* says it applies to

01:49:01  18  all Chapter 110 offenses, essentially without limitation, right?

01:49:06  19  That's what *Hollon* tells us.

01:49:11  20        Also --

01:49:12  21        THE COURT:  I'm looking at -- where is it? -- page 758

01:49:18  22  of it where it's talking about the legislative history of 4B1.5

01:49:22  23  also supports applying (b) to child exploitation enterprise.

01:49:28  24  And they talk about the Adam Walsh Protection Act, talk about

01:49:33  25  its rule-making exercises.  They talked about Chapter 110 being

01:49:38  1    in there.  I mean, Commission -- or the court seems to almost

01:49:41  2    have forgotten that 110 had been in there from the outset, but

01:49:46  3    it almost seems to be saying that it was okay for them to add

01:49:49  4    110 in there now that they have a new statute they have to

01:49:52  5    figure out something to do with.

01:49:55  6             MR. GOLDBERG:  I apologize, Your Honor.  I thought you

01:49:56  7    were referring to the defendant's filing and argument.  *Hollon*

01:49:57  8    is what the Government cited, out of the Sixth Circuit.

01:50:01  9             THE COURT:  Right.

01:50:01  10            MR. GOLDBERG:  And on 758 of that --

01:50:01  11            THE COURT:  I thought you were citing it primarily for

01:50:04  12   the idea of the double counting.

01:50:06  13            MR. GOLDBERG:  Yes, but it does state, if the

01:50:09  14   Commission sought to exclude engaging in a CEE from the covered

01:50:12  15   sex crime definition, it would have said so or would have done

01:50:15  16   so, and it did not.  So that would be the Government's

01:50:18  17   assertion, obviously.  There is published case law on it, just

01:50:22  18   out of another circuit.

01:50:23  19            I do want to also have the Court consider, at the time

01:50:27  20   this was promulgated -- I know we're really hanging on 2252A

01:50:32  21   subsection (g) which is the CEE, but production still existed at

01:50:38  22   that time before the Adam Walsh Act.  And that was a Chapter 110

01:50:42  23   offense, and that gets applied repeatedly for 4B1.5.  It's hard

01:50:48  24   to say --

01:50:49  25            THE COURT:  Mr. Lockhart's argument is it shouldn't

01:50:52  1    be, though.

01:50:53  2            MR. GOLDBERG:  But there's no case law to suggest

01:50:54  3    that.

01:50:55  4            THE COURT:  He wants us to make case law.

01:50:56  5            MR. GOLDBERG:  He wants *you* to make case law.

01:50:59  6            THE COURT:  Okay.  True.

01:51:00  7            MR. GOLDBERG:  Without anything to rely on when there

01:51:03  8    are cases such as *Hollon*, as it relates to CEE.  And there are

01:51:07  9    cases relating to 994, which is when the Commission had to

01:51:12  10   define a controlled substances offense in *Pridgeon* and *Smith*,

01:51:14  11   which are binding on this Court out of the Eleventh Circuit,

01:51:17  12   vested the Commission with authority to say what those offenses

01:51:20  13   are.  There is instructive law in our circuit about that.

01:51:26  14           THE COURT:  Unless you want to expand further on

01:51:29  15   either of those points, I would like you to talk about double

01:51:31  16   counting because the *Rogers* case, it seems to me, sets forth the

01:51:39  17   standard.  And it says that double counting's permitted if the

01:51:43  18   Sentencing Commission intended that result and the guideline

01:51:48  19   section in question concerns conceptually separate notions

01:51:52  20   relating to sentencing.

01:51:53  21           The court then goes on, I think, to clearly answer the

01:51:56  22   question that 4B1.5 was intended for any double counting that it

01:52:02  23   might have in it because it specifically says it's plus the

01:52:08  24   offense level determined in Chapters 2 and 3, where the double

01:52:11  25   counting would occur if it's going to.

01:52:13  1          So I think that part of the analysis is foreclose --

01:52:18  2   his argument is foreclosed under that part of the analysis.  But

01:52:21  3   I don't read that decision to go further and do any analysis

01:52:25  4   whatsoever of whether the guideline in that case and 4B1.5

01:52:31  5   concern conceptually separate notions, number one; and,

01:52:34  6   number two, even if it did, the guideline provision in that case

01:52:38  7   is not the same 2G guideline provision in this case.

01:52:43  8          So what's the Government's response as to the

01:52:48  9   foreclosing nature of *Rogers* on the double-counting argument?

01:52:53  10         MR. GOLDBERG:  It depends on how the Court rules on

01:52:55  11  our first issue.  Right?  Because if the Court rules that 4B1.5

01:53:01  12  does not apply on a -- Count One, child exploitation enterprise,

01:53:08  13  we may have to shift to guideline provisions -- I haven't done

01:53:13  14  the calculations for production, which we clearly know it does

01:53:17  15  apply because of *Rogers*.  But to go back to the CEE, first prong

01:53:22  16  I think the Court is tracking is satisfied.

01:53:24  17         The question is whether the conceptually different

01:53:27  18  harm and the focus of the crime obviously for CEE is the

01:53:31  19  engagement of the enterprise, which is distinct from the pattern

01:53:39  20  of what the defendant committed here.  Because you can commit a

01:53:42  21  CEE and not have a pattern of a sexually covered -- the

01:53:48  22  production offense, basically.  Right?  Because you can be

01:53:51  23  engaged in a criminal -- a child exploitation enterprise for

01:53:56  24  distributing three images of child pornography to a group of 12

01:54:00  25  people that included more than one victim without ever producing

01:54:04  1   or touching or doing anything the defendant did here.  They are

01:54:08  2   different harms, which means they're conceptually different, and

01:54:13  3   that's the second prong.

01:54:15  4        THE COURT:  Okay.  You've piqued my interest on your

01:54:20  5   argument that if I agree with the defendant in all respects and

01:54:24  6   find that 4B1.5(b) enhancement does not apply here, then we

01:54:34  7   would not -- then what would happen?  I mean, I guess your

01:54:38  8   argument is we would have to recalculate the guidelines entirely

01:54:41  9   using the production offense as the base offense to see if it

01:54:46  10  got higher than 40?

01:54:47  11       MR. GOLDBERG:  That's not my argument.  That is my

01:54:49  12  concern, that that is a possibility.  I mean, if you found that

01:54:54  13  4B1.5 did not apply for a CEE but it did apply for a production,

01:55:05  14  the United States probation officer -- who I'm sure is thrilled

01:55:09  15  to hear this -- I assume would then have to create two

01:55:12  16  guidelines and see which reaches the highest level because I

01:55:15  17  think that's what the probation office is instructed to find.

01:55:18  18       So you'd have the CEE, which is under 2G2.6(a),

01:55:22  19  starting at a 35, plus the four for the age of the victim, plus

01:55:29  20  two because of the relationship to the minor victim, plus two

01:55:35  21  for the interactive service.  That takes to you a 43 for the CEE

01:55:41  22  offense, so you'd be locked at the 43.  If you had to then check

01:55:50  23  that against the production guideline, you'd be at a 2G2.1, a

01:55:57  24  base offense level of 32.  If it involved a minor who had not

01:56:02  25  attained the age of 12 years, you add four, which we have here.

01:56:07  1   If it involves distribution, there's two more...

01:56:16  2             MR. LOCKHART:  I can help to some degree.

01:56:18  3             The original presentence report lists the offense

01:56:21  4   level for production at 37.  So we'd add five for 4B1.5, and

01:56:29  5   ultimately, I think that would get us to a base -- an ultimate

01:56:33  6   end offense level of 42, Cat 1.  It would be 360 to life.

01:56:44  7             THE COURT:  So...

01:56:45  8             MR. GOLDBERG:  Yes, Your Honor, so if you look at --

01:56:47  9             THE COURT:  Hold on.

01:56:48  10            MR. GOLDBERG:  I apologize.

01:56:50  11            THE COURT:  Let me just make sure I understand that.

01:56:51  12            So if -- what you're telling me, Mr. Lockhart, is if

01:56:55  13   you prevail on this argument, his guideline gets worse?

01:56:59  14            MR. LOCKHART:  Well, his guideline right now is at

01:57:03  15   life.

01:57:03  16            MR. GOLDBERG:  Right.  And if it's under the

01:57:06  17   production count -- if the Court finds that 4B1.5 does not apply

01:57:09  18   to CEE --

01:57:11  19            THE COURT:  All right.  Here's my question, and it's

01:57:14  20   why I started with the question of what the real world -- not

01:57:22  21   the real world, but at least the academic significance of this

01:57:26  22   exercise that we're going through is.  And I thought what we had

01:57:29  23   agreed that the outset was that if I sustain the defendant's

01:57:37  24   objection, we would get to a 292 to 365.  But what I'm now being

01:57:42  25   told, if I sustain the defendant's objection, we get to a 360 to

01:57:46  1    life; is that right?

01:57:48  2            MR. GOLDBERG:  That is correct, because if you --

01:57:49  3            THE COURT:  That would have been nice to know at the

01:57:52  4    outset of this.

01:57:53  5            MR. GOLDBERG:  That is fair.  What the Court was doing

01:57:56  6    was just backing out the numbers from the final PSR.  But as

01:58:00  7    Mr. Lockhart notes, it would actually take us to the first -- or

01:58:03  8    the initial draft to the PSR, assuming -- this is what we

01:58:07  9    probably did not address -- assuming the Court does agree under

01:58:11  10   *Rogers* that 4B1.5 applies to production.

01:58:15  11           THE COURT:  I guess maybe the question then -- well,

01:58:17  12   let me let you finish your argument.  I'll ask the question of

01:58:21  13   Mr. Lockhart.  Because if *Rogers* would be binding precedent on

01:58:27  14   that question, then that's the end of the discussion; but if his

01:58:31  15   argument --

01:58:31  16           Would you still be making the same argument,

01:58:33  17   Mr. Lockhart?  Would it be just to preserve at that point?

01:58:37  18           MR. LOCKHART:  Well, it's to preserve it, but I think

01:58:38  19   it's also relevant just to show the -- just completely arbitrary

01:58:43  20   and irrational computations that we're dealing with here, from

01:58:48  21   my perspective.  I'm not saying that the Court agrees with that,

01:58:50  22   but the inconsistencies are all based on -- are founded in my

01:58:56  23   arguments here regarding how these two offenses are being

01:58:59  24   calculated under the sentencing guidelines.

01:59:06  25           THE COURT:  Okay.  All right.  Well, that -- I

01:59:10  1   promised you I'd let you respond once the Government argued, so

01:59:14  2   I'll let you respond if you want.

01:59:16  3                    MR. LOCKHART:  Your Honor, just briefly.

01:59:17  4          You know, the Government has repeatedly indicated that

01:59:23  5   we haven't cited any case law, but there is no case law here.  I

01:59:31  6   don't know that I was able to find a single case anywhere that

01:59:34  7   addresses this specific issue going back with regard to the CEE

01:59:37  8   and the production and 4B1.5, as it relates to the original 1998

01:59:43  9   statute.  Beyond that, Your Honor, I don't have any comment.

01:59:47  10                   THE COURT:  All right.  All right.  Well, thank you

01:59:53  11  both for your arguments.  Just to make sure that -- I always

01:59:59  12  like to try to start with what the discussion we're going to

02:00:03  13  have means.  Because if it turns out that we're just having a

02:00:08  14  completely academic discussion that the guideline answer would

02:00:12  15  be the same anyway we cut it, that's -- I don't think that's --

02:00:19  16  I mean, in some respects, it makes a difference because it's

02:00:22  17  good to know that at the outset; on the other hand, I think it

02:00:25  18  is important that we get these correct.

02:00:28  19         Here, it doesn't make as big of a difference as I

02:00:31  20  initially believed, at least from a guideline calculation

02:00:35  21  perspective, because the parties seem to be in agreement that if

02:00:39  22  I overrule the objection, the guideline is life; if I sustain

02:00:44  23  the objection through a different method of calculation, it gets

02:00:47  24  to a guideline range of 360 to life.  I understand that's a

02:00:52  25  difference, a potentially significant difference, but it's a

02:00:56   1   much less significant difference than what I initially believed.

02:01:02   2   And that's, perhaps, my fault for trying to clarify too simply

02:01:11   3   when it wasn't quite as simple.

02:01:13   4          Anyway, so the question I'm asked to consider is

02:01:16   5   whether the enhancement, the five-point enhancement in 4B1.5,

02:01:19   6   applies here.  And as I said from the outset of my questioning,

02:01:26   7   you've got to meet four criteria for that to apply.  First, the

02:01:32   8   offense you're being sentenced on has to be a covered sex crime;

02:01:38   9   second, you cannot be a career offender; third, you cannot be

02:01:42  10   a -- have a prior sex offense, in effect, and therefore get the

02:01:49  11   enhancement under 4B1.5A; and then, fourth, you have to have

02:01:55  12   engaged in a pattern of activity involving prohibited sexual

02:01:58  13   contact.

02:01:59  14          The second and the third one, he's not a career

02:02:01  15   offender, he doesn't meet 4B1.5(a), and so it really boils down

02:02:07  16   to the first two, whether this is a covered sex crime and

02:02:11  17   whether there's a pattern of activity involving prohibited

02:02:15  18   sexual contact.  And as the commentary is currently written, it

02:02:20  19   is a covered sex crime because it falls into Chapter 110 of

02:02:26  20   Title 18, but the question is whether it -- Chapter 110 should

02:02:32  21   be in that definition to begin with.

02:02:34  22          And I think Mr. Lockhart makes a fairly compelling

02:02:43  23   argument that, at least initially, Chapter 110 should not have

02:02:47  24   been in there.  Because as I read the Section 505 of the 2018 --

02:02:56  25   excuse me, the 1998 act that we've been talking about, it

02:03:00  1   directs the Commission that upon completion of the review that

02:03:05  2   they've directed under subsection (1) -- or paragraph 1, that

02:03:09  3   they're to promulgate amendments to the guidelines to increase

02:03:13  4   the penalties applicable to the offenses referred to in

02:03:16  5   paragraph 1.  So just those six offenses, you increase the

02:03:22  6   penalties in any case.  And I think you can only read that to

02:03:26  7   mean in any case involving those six offenses where the

02:03:30  8   defendant has engaged in a pattern of activity.

02:03:33  9        So I think, at least initially, the Commission went

02:03:37  10  beyond what they were directed to do in Section 505 by adding

02:03:42  11  Chapter 110 into that list.  That doesn't say that the

02:03:49  12  Commission went beyond their authority -- at least in my mind --

02:03:53  13  in defining what a pattern of activity involving the sexual

02:03:56  14  abuse or exploitation of a minor is.  Because that term, that

02:04:02  15  definition or that language, is not defined in the statute and

02:04:07  16  could mean about anything, best I can tell.  And I don't accept

02:04:12  17  the argument that that pattern had to involve only those six

02:04:15  18  offenses.  I think that, most logically and reasonably, is

02:04:20  19  interpreted to mean a pattern involving any offenses of sexual

02:04:25  20  abuse or exploitation of a minor.

02:04:27  21       So I think it was proper for the Commission to define

02:04:30  22  pattern of activity the way they did and, thus, the fourth prong

02:04:35  23  of that is not only met but it is properly defined or properly

02:04:42  24  met in the statute, because the conduct that the defendant here

02:04:46  25  engaged in on more than one occasion, producing child

02:04:51  1   pornography, I think falls clearly within the range of

02:04:56  2   reasonable interpretations of what "prohibited sexual contact"

02:04:59  3   could mean.

02:05:00  4         So, at least, the fourth prong is factually met and

02:05:05  5   legally properly defined here.

02:05:09  6         The "covered sex crime" component of it, while I think

02:05:12  7   there is a good argument that the Commission went farther than

02:05:16  8   it was supposed to in 1998, I don't think that leads me to the

02:05:22  9   conclusion that as we sit here today or as we sat here after the

02:05:29  10  Adam Walsh Act was passed an entirely new crime was created,

02:05:34  11  that the Commission was without authority pursuant to their

02:05:38  12  general delegation of authority to define "covered sex crime" to

02:05:42  13  include the Adam Walsh Act new offense or production or anything

02:05:48  14  else in Chapter 110.  I just don't think that that limitation on

02:05:53  15  their authority exists anywhere that I've been able to find.

02:05:58  16        So as we sit here today, I don't see anything

02:06:02  17  unconstitutional -- I don't know it's a constitutional issue --

02:06:06  18  or improperly interpreted from the Commission's definition.  So

02:06:11  19  whether you look at it from Mr. Goldberg's argument that it's

02:06:16  20  been right all along, I don't think I fully buy that.  But I

02:06:20  21  definitely don't buy the argument that it was beyond their

02:06:23  22  authority to define "covered sex crime" to include Chapter 110

02:06:27  23  offenses or this one in particular.

02:06:31  24        And I think that does have support in the Sixth

02:06:36  25  Circuit's opinion.  It's not directly on point because all

02:06:39 1    aspects of the argument presented here were not raised; but to

02:06:44 2    me, it's analogous enough that I think the Eleventh Circuit

02:06:47 3    would find it persuasive, as do I.  And so for all those

02:06:51 4    reasons, I would find that the guideline here, both factually

02:06:56 5    applies -- which has not been contested -- but also legally

02:07:00 6    applies based upon my analysis and consideration of the

02:07:03 7    argument.

02:07:03 8            Any additional findings or thoughts or questions that

02:07:08 9    I need --

02:07:08 10           And as to double counting, I think that, as I said,

02:07:13 11   *Rogers* directly forecloses the first prong because the

02:07:17 12   Commission clearly intended that result because the Chapter 4

02:07:21 13   offense says you get these points in addition to anything you

02:07:25 14   got in Chapter 2 or 3, and that's what is allegedly being double

02:07:32 15   counted.

02:07:32 16           And as to the second prong, I agree with the

02:07:35 17   Government, even though I don't think it was addressed in

02:07:38 18   *Rogers*, it dealt with a different statute, I think *Hollon* makes

02:07:41 19   the point that conceptually what the points you're getting for

02:07:50 20   the CCE offense -- or CEE offense is for the enterprise nature

02:07:56 21   of it where the points you're getting under 4B1.5 are for the

02:08:00 22   underlying criminal conduct.  So I think they're apples and

02:08:04 23   oranges and, thus, it was properly counted.

02:08:06 24           So with that additional finding, I think I've

02:08:09 25   addressed all three of the defendant's arguments as to why this

02:08:13   1   doesn't apply.

02:08:13   2          Does the Government need any additional findings on

02:08:16   3   that?

02:08:16   4          MR. GOLDBERG:  No, Your Honor.

02:08:17   5          THE COURT:  Mr. Lockhart?

02:08:18   6          MR. LOCKHART:  I do not, Your Honor.

02:08:19   7          THE COURT:  Okay.

02:08:21   8          All right.  Mr. -- and so where that leaves us is the

02:08:25   9   guidelines calculated in the second revised report are correct

02:08:30  10   and that the guideline range here is life.

02:08:33  11          And, again, that range is not binding upon me, but it

02:08:35  12   is something I am required to take into consideration.

02:08:39  13          All right, Mr. McClure.  I know that was a lot of

02:08:43  14   legal talk and discussion.  Did you follow it generally?

02:08:47  15          THE DEFENDANT:  I did follow it.  Yes, sir.

02:08:49  16          THE COURT:  Okay.  All right.  This would be your

02:08:51  17   opportunity, if you'd like to take it, to tell me anything you

02:08:54  18   want me to know.  And again, you're not required to but I am

02:08:56  19   happy to hear it.

02:08:57  20          THE DEFENDANT:  I will, Your Honor.  Thank you.

02:09:02  21          What I've done is horrendous, and I admit that I've

02:09:06  22   done it.  And it's a very serious crime, and impacts of it has

02:09:12  23   been very far reaching.  I have broken the trust of the

02:09:20  24   parent-child -- the parent-child trust there with my daughter,

02:09:24  25   and it's very disappointing to me that I would do something like

| | |
|---|---|
| 02:09:27 | 1 |
| 02:09:31 | 2 |
| 02:09:35 | 3 |

that.  I've also put her mother in a very difficult situation.
And she is struggling being a single mother on her own, and I'm
more than willing to give her the restitution she's asking for.

This is terrible.  And, really, I want to apologize to
you for the things you're going to see today, for Mr. Goldberg's
going to show you some very despicable things that I've done.
It's disgusting really.  And when I had looked back at it, I was
shocked myself that I would do and say the things that I've
done, particularly to the one person that I care about and love
more than anything in the world.  I don't have any excuses, and
I don't pretend to have any excuses or any rationale of what
I've done.

I need help.  I have a problem and it's clear.  When
you see these pictures, you're going to see that I have a
problem.  And I don't know why I did it, and I'm going to need
counseling to figure out why I did it, to try to understand it.
And I'm going to need treatment to -- you know, just to better
myself because I don't understand it.  I don't understand at all
why I would do that to my daughter or my family.  I've lost my
entire family through this whole ordeal.  And it's really
despicable.  I feel like scum, scum of the earth, and I deserve
it.  I really do.

I don't know what else to say except for looking
forward to the future of therapy and counseling and treatment.
That's what I need.  And one day, I'll understand I'm sure.  But

02:11:21  1   I don't know what else to say that -- I mean, there is nothing I

02:11:24  2   can say to make it better.  I'll never get my family back, and

02:11:29  3   reconciling with my daughter is probably next to zero, if at

02:11:33  4   all.  So that's -- this is -- it's definitely life changing for

02:11:39  5   a lot of people:  my daughter, her mother, my family.  It's

02:11:47  6   just been a terrible ordeal, and no amount of apologies is going

02:11:52  7   to fix it or change it back.

02:11:57  8          And that's really all I have to say.  I don't know

02:12:01  9   anything else that I can say.  It's just, I feel terrible, and

02:12:04  10  I'm the bottom of the -- bottom of the scum, really, is how I

02:12:08  11  feel about it.  And I don't know what else I can say, Your

02:12:14  12  Honor.

02:12:14  13         THE COURT:  Okay.  I appreciate your comments.

02:12:17  14         THE DEFENDANT:  Thank you.

02:12:18  15         THE COURT:  All right.  Mr. Goldberg, sentencing

02:12:19  16  argument?

02:12:26  17         MR. GOLDBERG:  Your Honor, with the Court's

02:12:27  18  indulgence, I do have a few exhibits.  I've shown them to

02:12:30  19  defense counsel in advance.  It's Exhibit 1 through 9 which I

02:12:34  20  will admit without objection, I believe.

02:12:36  21         MR. LOCKHART:  There's no objection, Your Honor.

02:12:38  22         THE COURT:  They'll be received.

10:05:41  23      (GOVERNMENT EXHIBITS 1-9:  Received in evidence.)

02:12:43  24         MR. GOLDBERG:  And I want to show these to the Court

02:12:43  25  so the Court doesn't just have to rule on a cold, hard PSR.

02:12:46  1   This is a real girl.  So the family is here --

02:12:49  2            So if I can just have Mom...

02:12:51  3            Okay.  Let the record reflect, I just wanted to make

02:12:53  4   sure the mother of the girl closed her eyes for the next few

02:12:57  5   minutes.

02:12:57  6            Publishing to the Court Government Exhibit 1.

02:13:05  7            Government Exhibit 2.

02:13:07  8            Government Exhibit 3.

02:13:19  9            THE COURT:  Before you go on, Mr. Goldberg, were all

02:13:21 10   of these images published, or are these just background images?

02:13:27 11            MR. GOLDBERG:  These are images that were located in

02:13:28 12   his electronic device.

02:13:30 13            THE COURT:  Okay.

02:13:30 14            MR. GOLDBERG:  Government Exhibit 4.

02:13:37 15            Government Exhibit 5.

02:13:45 16            Government Exhibit 6.

02:13:46 17            I believe Your Honor heard in one of the Government's

02:13:50 18   filings that the defendant would send images of his daughter for

02:13:53 19   other men in the enterprise to masturbate to and then masturbate

02:13:58 20   upon and then send the image back to the defendant.  It's

02:14:01 21   Government Exhibit 6.

02:14:02 22            Government Exhibit 7.

02:14:06 23            Government Exhibit 8 is communication, whether reality

02:14:16 24   or fantasy, where a person writes to the defendant:  "How long

02:14:21 25   you been tasting that sweet pussy?"  The defendant responds:  "I

02:14:25  1    can't say."

02:14:28  2            Government Exhibit 9.  After distributing sanitized

02:14:32  3    images -- the Government has sanitized them -- of the victim,

02:14:36  4    wherein the confederate asks if she's begging to be used and the

02:14:43  5    defendant responds:  "She is."

02:14:47  6            The confederate states:  "I'd enjoy seeing her raped."

02:14:52  7    And the defendant responds:  "Yeah."

02:14:59  8            Okay.  I'm done publishing the exhibits.

02:15:04  9            And I'll just ask the Court.  So the Court today is

02:15:09  10   not a party.  You're the neutral and detached arbiter of justice

02:15:15  11   today.  So what is justice for this type of depravity?  We know

02:15:19  12   the defendant is going to be specifically deterred, right?  He

02:15:22  13   has to at least serve 20 years.  But there's also the question

02:15:26  14   of general deterrence and promoting respect for the law when a

02:15:29  15   person does this to a six- on to seven-year-old, calling for and

02:15:32  16   discussing her rape, sharing her intimacy with others in a child

02:15:37  17   exploitation enterprise.

02:15:38  18           In the defendant's sentencing memorandum, he suggests

02:15:43  19   that there are others who are worse.  There are always others

02:15:49  20   who are worse.  I'm going to suggest the Court not to try to

02:15:53  21   catch that red herring for this reason:  It reminds me of my

02:15:58  22   days as a homicide prosecutor in Baltimore.  Knowing, willful,

02:16:04  23   premeditated with malice aforethought, a bad guy walks behind

02:16:09  24   someone, puts a bullet in the back of head.  One bullet.  Dead.

02:16:12  25   Murdered.  First degree.  Knowing, willful, premeditated and

| | | |
|---|---|---|
| 02:16:18 | 1 | with malice aforethought, someone straddles a victim, looks at |
| 02:16:21 | 2 | the victim right in the eye, and strangles the life out of them. |
| 02:16:24 | 3 | That takes time.  Takes time for oxygen to stop going to the |
| 02:16:29 | 4 | brain and for the pass-out and then brain death. |
| 02:16:32 | 5 | Many would argue one's worse than the other because |
| 02:16:35 | 6 | the victim in that case has to look you in the face as you're |
| 02:16:39 | 7 | strangling the life out of them, but they're both life offenses. |
| 02:16:43 | 8 | There's always going to be someone who's worse.  It's |
| 02:16:45 | 9 | the difference between a ceiling and a basement.  The question |
| 02:16:49 | 10 | is what is appropriate for this.  Not that there might be |
| 02:16:52 | 11 | someone who is worse than the defendant.  It's what's the |
| 02:16:55 | 12 | correct punishment for this defendant to promote respect for the |
| 02:16:58 | 13 | law and to deter others. |
| 02:17:01 | 14 | Obviously, by his own statements, he violated the |
| 02:17:04 | 15 | sanctity of this victim.  And what is most disturbing, I think, |
| 02:17:09 | 16 | is that he kind of basked in the victimization, and others |
| 02:17:14 | 17 | basked in it as well.  What is the appropriate sentence for |
| 02:17:20 | 18 | that? |
| 02:17:22 | 19 | He's guidelines are life.  They're advisory.  The |
| 02:17:29 | 20 | trust that he violated -- and she was old enough to know what's |
| 02:17:35 | 21 | happening.  He put them into a group, the images, that he was |
| 02:17:45 | 22 | administrating.  It's not some lurker in a group just receiving |
| 02:17:49 | 23 | stuff and downloading.  He was producing and administrating. |
| 02:17:52 | 24 | Those are aggravating factors.  Talking about raping her is an |
| 02:17:57 | 25 | aggravating factor. |

02:17:58  1            I trust the Court will pronounce the appropriate

02:18:01  2   sentence for that.

02:18:02  3            May I approach with the exhibits and ask that they be

02:18:04  4   placed under seal?

02:18:05  5            THE COURT:  Yes, sir.  Without objection, they will

02:18:07  6   be.

02:18:10  7            MR. GOLDBERG:  That's all I have, Your Honor.

02:18:11  8            THE COURT:  All right.  Mr. Lockhart?

02:18:14  9            MR. LOCKHART:  Thank you, Your Honor.

02:18:19 10            So one of the things that we talked about in my

02:18:22 11   sentencing memorandum was what Mr. McClure is charged with.  And

02:18:27 12   one of the things that he's charged with, obviously, the Court

02:18:31 13   doesn't see very often because the nation itself, as a whole,

02:18:34 14   doesn't see it very often.  It was roughly mid 50, the number of

02:18:40 15   prosecutions of child exploitation enterprise across the entire

02:18:44 16   United States over the course of six fiscal years, between 2015

02:18:48 17   and essentially 2020.

02:18:52 18            Specifically, Your Honor, five last year across the

02:18:56 19   country; less than 20, 18 in particular, in 2019; nine in 2018;

02:19:02 20   nine in 2017; four in 2016; 11 in 2015, totaling 56 over the

02:19:11 21   last six years.

02:19:13 22            Mr. Goldberg in every case that I've ever had

02:19:16 23   involving anything of this nature can stand up here and

02:19:22 24   respectfully say that this is the worst case that there is, but

02:19:26 25   the problem is that's just not true.  With all due respect to

02:19:31  1   the victim, with all due respect to Ms. Smith, with all due

02:19:35  2   respect to everyone's families, respectively, it's just not the

02:19:39  3   case.

02:19:41  4         This is essentially a production offense involving an

02:19:44  5   individual who went on social media and said some very egregious

02:19:49  6   things.  But as the Court may have seen already, I don't know

02:19:53  7   how many of these types of sentencings the Court had, you will,

02:19:58  8   frankly, see this same behavior in cases where the client has

02:20:02  9   been charged with offenses that are far less serious.

02:20:04  10        Production carries a statutory range of 15 to

02:20:08  11   30 years.  It's a very narrow range, frankly.  Doesn't take very

02:20:12  12   long to get from 15 to 30 under the guidelines for the reasons

02:20:16  13   that I've explained ad nauseam in our memo.  The same is true

02:20:20  14   with CEE.  But what's true is that we also see these same things

02:20:26  15   with just mere possession folks, as well as receipt folks, as

02:20:32  16   well as distribution folks.  And this type of behavior is very

02:20:37  17   common.  And the problem with these kinds of cases is that the

02:20:40  18   Court still must apportion guilt taking into account the

02:20:47  19   severity of the offense.

02:20:49  20        And we -- meaning the defense bar -- I think to some

02:20:53  21   extent feels that we're on our heels if we even discuss the

02:20:58  22   offense because it's making light or talking about something

02:21:01  23   that happened to a victim and where we're minimizing the offense

02:21:06  24   conduct.  And I'm not trying to do that at all.  It's egregious

02:21:09  25   behavior.  All of these cases involve egregious behavior.

02:21:12  1   There's not a single child pornography possession, receipt,

02:21:15  2   distribution, production, enticement, much less a child

02:21:21  3   exploitation enterprise.  We know that also because we can see

02:21:29  4   how the guidelines are calculated.

02:21:30  5        And the Commission keeps fairly good data, not as well

02:21:34  6   as we would -- well, not as good as what I can get access to or

02:21:38  7   what -- I'm sorry, not as good as what I hoped I could gain

02:21:41  8   access to, but in terms of looking at what the Commission has

02:21:47  9   said about prior sentencings in production cases, for example,

02:21:52  10  it illustrates that what Mr. McClure did here is basically a

02:21:57  11  mid- to lower-level production case.

02:22:01  12       The statistics reflects, for example, Your Honor, that

02:22:03  13  over 60 percent of the people in production cases were in some

02:22:07  14  capacity of trust, like a parent.  A significant minority of

02:22:14  15  these cases involved two or more victims.  And in 2019, the

02:22:19  16  number of victims ranged from 2 all the way up to 440.

02:22:24  17       So again, I'm not minimizing the offense here, but

02:22:27  18  there are cases that are extraordinarily more severe and cases

02:22:33  19  that are just more severe in general that have other aggravators

02:22:37  20  like coercion, incapacitation, prostitution, sexual conduct,

02:22:43  21  which shockingly is -- we see in over 80 percent of cases that

02:22:48  22  involve production.  But we do not see it here with Mr. McClure.

02:22:52  23  The images that Mr. McClure posted don't even contain the

02:22:56  24  victim's face, for example, which is relevant.  It's a relevant

02:23:00  25  fact.

02:23:01  1    The victim was interviewed in a multi-hour long

02:23:05  2  interview by the equivalent of Child and Protective Services or

02:23:11  3  law enforcement where she never said -- and was asked repeatedly

02:23:15  4  in myriad ways -- that Mr. McClure ever touched her in any way,

02:23:19  5  shape, or form.  There is no evidence before this Court that he

02:23:22  6  has sexually touched her in any way, evidenced by the fact that

02:23:27  7  the specific offense-level adjustment is not in play because

02:23:31  8  there is no such evidence that he did so.  Those are common in

02:23:35  9  80 percent of the production cases, Your Honor.

02:23:42  10    In terms of some of the other statistics, 75 percent

02:23:44  11  of your offenders are white males; almost a hundred percent are

02:23:49  12  U.S. citizens; 94 percent are male, for example; 38 years of age

02:23:53  13  is the average age; 70 percent are in Criminal History

02:23:56  14  Category I.

02:23:57  15    Mr. McClure has literally no criminal history.  He has

02:24:00  16  some but it's all very minor.  He's not even a felon.

02:24:05  17    In contrast to, again, almost 81 percent of production

02:24:11  18  offenders involve sexual contact; 40 percent incapacitated,

02:24:14  19  coerced, or enticed a victim; 4.5 percent drugged or

02:24:19  20  incapacitated a victim, defined as unconscious, docile, or

02:24:23  21  making the victim cooperative prior to production.  These are

02:24:27  22  2019 statistics from the report from the Sentencing Commission,

02:24:32  23  by the way, regarding child production offenses.

02:24:36  24    We have nearly 10 percent that use violence or

02:24:38  25  threaten violence; 8.4 percent involves sextortion; 1.6 percent,

02:24:41  1  bullying; 7.8 percent, other pressure.  Over 15 percent used

02:24:47  2  enticement, which included almost 3 percent for drugs and

02:24:50  3  alcohol, almost 12 percent for gifts and incentives, and

02:24:53  4  10.9 percent had a prior sexual contact offense in 2019.

02:24:58  5       We see that also in the end numbers.  We see

02:25:02  6  340 months on average for parents sentenced to production, but

02:25:09  7  you have to take into account that that hasn't parsed out all

02:25:13  8  the aggravators.  And where 80 percent engaged in sexual

02:25:17  9  conduct, that number would go significantly lower than that,

02:25:19  10  particularly for someone who's a first-time offender.

02:25:22  11       I laid out those numbers in the sentencing memo.  And

02:25:25  12  the numbers actually, of course, get down near 180 months

02:25:29  13  because you have to anticipate that if the guidelines are

02:25:33  14  working properly, that they -- that they're going to calculate

02:25:37  15  out across the statutory range in a meaningful way.

02:25:41  16  Unfortunately, I don't know that I need to get into it in great

02:25:43  17  detail because I did so in the sentencing memo, but the range

02:25:47  18  here inevitably ends up at or near the minimum to the maximum.

02:25:51  19  And certainly with CEE it ends up near the maximum.

02:25:55  20       Mr. Goldberg has not explained how this case, this CEE

02:25:58  21  case, is a life-sentence case.  He notes in his response of

02:26:07  22  March 29th that -- where he talks about my reference to *Wayerski*

02:26:12  23  and *McGarity* cases, and he states that he was the U.S. attorney.

02:26:15  24  And in that case there were 14 defendants.  Seven pled guilty;

02:26:18  25  seven went to trial.  District Judge Collier sentenced all those

02:26:21  1   who went to trial to life imprisonment upon conviction.  Those

02:26:25  2   who pled guilty received varying sentences.  He doesn't point

02:26:28  3   out what those sentences were, but they weren't life.

02:26:34  4        As I pointed out, if we take out use of computer,

02:26:39  5   which I suspect has been employed in every one of these

02:26:43  6   54-some-odd CEE cases since 2015, that's going to apply every

02:26:49  7   single time.  The scope of these CEE cases, Your Honor, are

02:26:52  8   enormous.  *Wayerski* and *McGarity* are perfect examples, where the

02:26:57  9   actual offense conduct is -- if not stretches across the nation,

02:27:03  10  it stretched across multiple countries and involved thousands

02:27:07  11  and thousands of images of child pornography and other

02:27:10  12  aggravating behavior.

02:27:12  13        Just for Mr. McGarity alone, the case was summarized

02:27:14  14  as "describing the offense conduct as cooperative, multinational

02:27:18  15  criminal investigation directed at tracking a sprawling

02:27:21  16  international child pornography ring comprised of as many as

02:27:25  17  64 known individuals sharing more than 400,000 images and a

02:27:29  18  thousand videos of child pornography across six countries."

02:27:32  19        And we can find other cases as well in the production

02:27:38  20  realm that are far more egregious than this that involve -- like

02:27:42  21  I said, prostitution, incapacitation, actual sexual conduct; and

02:27:48  22  they're not -- they're at all levels of gradation higher than

02:27:53  23  Mr. McClure.

02:27:55  24        I cited the case *U.S. v. Harris* in the sentencing

02:27:59  25  memo.  It's an Eleventh Circuit case from 2020 where it involved

| | |
|---|---|
| 02:28:01 | 1 |

an individual who was sentenced to 30 years -- so he got the
statutory maximum penalty for production -- where he videotaped
15- and 16-year-old boys engaging in sex acts, seven minors in
all, two were his own godchildren, where he shared videos and
photographs and involved other males.  On one occasion he
invited a friend over to watch two male minors engage in sexual
activities, and then invited over a friend of his who also had
sex with one of those minors.  And when police showed up, he
engaged in obstructive-related conduct.  And that individual
received the 30-year maximum penalty, which would have been
Mr. McClure's guideline range but for the 4B1.5 subsection (b)
if it hadn't applied to CEE, for example.

And so Mr. Goldberg certainly has the right, and the
Court on its own certainly may want to see these images and look
to see what Mr. McClure did here.  And there's certainly nothing
wrong with that.  But to try to assert that this case should
score out either under the guidelines or result in a sentencing
outcome that results in a 30-year sentence or higher is just not
on all fours with the types and the level of severity that we
see across the board.

The only way that that could be justified is just if
the Court takes its own position that these types of offenses
are so egregious that it feels that, despite the disparity in
the sentences, that's just a sufficient-but-not-greater-than-
necessary sentence.  But that's also, too, where when we look

02:29:35 1   specifically at Mr. McClure, there are additional mitigating

02:29:39 2   factors, such as the report that lays some of those out from

02:29:45 3   Dr. Spoerl, which concludes that he is a low risk --

02:29:48 4   below-average risk of recidivism.  I believe it's 2 or 3 percent

02:29:52 5   over the course of a five-year period once he were released from

02:29:55 6   prison after a 20-year period.

02:29:58 7        But he also has some unusual characteristics.  We were

02:30:01 8   able to obtain his medical records from his physician in

02:30:04 9   Fort Walton, a man named Dr. Perry Hight.  Those records

02:30:08 10  reflected that Mr. McClure, back in 2018, was diagnosed with

02:30:11 11  hypogonadism, had an atypically low sex drive, started to take

02:30:18 12  testosterone -- ultimately began taking testosterone at double

02:30:23 13  the level that it was prescribed.  And at that point in time, we

02:30:25 14  see in his social history that he starts taking jujitsu classes,

02:30:30 15  he starts lifting weights, he ultimately encounters -- has an

02:30:34 16  encounter with an individual on the road in 2021 that resulted

02:30:38 17  in a road rage charge, which is in the presentence report and

02:30:41 18  pending right now.  So we see kind of unusual -- not "kind of,"

02:30:45 19  but entirely unusual behaviors by Mr. McClure since he began

02:30:48 20  taking and overmedicating on testosterone.

02:30:53 21       Dr. Spoerl, of course, points out that that wouldn't

02:30:55 22  change anything in relationship to the underlying interests that

02:30:59 23  Mr. McClure had in these -- in this area; but it certainly is

02:31:03 24  relevant to why he would have begun to have done this when over

02:31:06 25  44 years, he never did so prior to that.

02:31:09  1        The other aspect of this is that, of course, after a

02:31:12  2   20-year sentence, he still would have hypogonadism; would not

02:31:17  3   have access to testosterone; when released, would certainly not

02:31:21  4   be prescribed testosterone.  And Dr. Spoerl makes it clear that

02:31:26  5   the data certainly reflects that after a 20-year sentence,

02:31:30  6   age-associated desistance is one of the most reliable indicators

02:31:34  7   for lack of recidivism.

02:31:37  8        The other thing she points out, which is built into

02:31:40  9   the Static-99 apparently, is the fact that this was an

02:31:43  10  incest-related offense; and so therefore, according to

02:31:46  11  Dr. Spoerl, the data also supports that risk of recidivism,

02:31:48  12  which in his case would be low or below average, is at that

02:31:54  13  level, taking into account a 20-year sentence.  But also, given

02:31:57  14  fact that his case involves his minor daughter and does not

02:32:04  15  involve him engaging in contacts with individuals that he

02:32:08  16  doesn't know or strangers and grooming them and things of that

02:32:12  17  nature.

02:32:14  18        When we look at the numbers, even from 2019, Your

02:32:17  19  Honor, just for production -- and I've summarized some of them

02:32:22  20  in terms of the statistics -- but even a mean sentence with

02:32:32  21  4B1.5 subsection (b), it's 324 months.  And like I said, we're

02:32:38  22  talking about an average sentence of 340 months for appearance,

02:32:43  23  and that cuts across all criminal history categories.  So we're

02:32:49  24  not even seeing sentences that are entirely at 360 months even

02:32:54  25  for production offenses.

02:32:56  1          But let me run through just some of the other
02:32:58  2  statistics regarding what the average sentences are.
02:33:00  3          340 months for parents sentenced to production, which
02:33:03  4  is 28.3 years --
02:33:05  5          And these are all out of the Sentencing Commission's
02:33:08  6  report from October 2021 regarding production offenses.
02:33:10  7          307 months if an individual engaged in or facilitated
02:33:15  8  sexual conduct of a minor;
02:33:17  9          313 months if there was incapacitation of a victim;
02:33:21 10          289 months if there was no sexual contact but the
02:33:27 11  individual engaged in a some form of online communication-type
02:33:31 12  activity, such as a chat room.  289 months.
02:33:36 13          270 months for all production offenders in total;
02:33:41 14          245 months for production only with no sexual contact
02:33:44 15  and no online communication activities -- so right at the bottom
02:33:49 16  end of the mandatory minimum.
02:33:52 17          No sexual contact at all was at 221 months;
02:33:56 18          And 57.2 percent of all the production cases resulted
02:34:00 19  in some form of variance.
02:34:02 20          And that goes back to my argument in the sentencing
02:34:05 21  memorandum regarding the application of 4B1.5, because at that
02:34:11 22  point, of course, he's either at 30 with production or he's at
02:34:16 23  life with CEE.  And in all instances with production, I would
02:34:22 24  submit, there's almost no way that that adjustment would not
02:34:28 25  apply the way that it's written in the commentary.  It's so

02:34:31  1   expansive that Your Honor would have to have a production

02:34:34  2   offense that doesn't involve more than a single series of --

02:34:40  3   uninterrupted series of behavior, and that's got to be an

02:34:48  4   extremely unusual fact pattern.

02:34:52  5         Even if had you that, I would point out, it does not

02:34:57  6   correlate to any less risk, because if you have someone that has

02:35:02  7   taken photos like Mr. McClure did on two or more occasions

02:35:05  8   versus someone that has a single uninterrupted offense where

02:35:12  9   there -- it's not stretched over the course of a different time

02:35:15  10  frame, such as once in the morning, once in the afternoon, or on

02:35:17  11  more than one occasion, that person, by definition, wouldn't be

02:35:20  12  any less dangerous or any more dangerous than someone like

02:35:25  13  Mr. McClure who has taken a number of different photos here.

02:35:28  14        And in relationship to Mr. McClure, let's look back at

02:35:31  15  the facts just for a minute.  38 photos over the course of one

02:35:35  16  month; no criminal history; her face, the victim's face, is not

02:35:39  17  in any of these photos.  He was on a chat room with about 30 or

02:35:44  18  40 other members.  This doesn't stretch across nations.  The

02:35:49  19  vast majority of the photos that he posted, she was clothed and

02:35:54  20  shirtless wearing white shorts.  There are some images which

02:35:58  21  you've seen where she is naked.  There are a single-digit number

02:36:02  22  of images where the victim is naked and there's a particular

02:36:06  23  focus on her unclothed vagina or her crotch region or her anus,

02:36:15  24  Your Honor.  Very, very small number of photos.

02:36:19  25        There's not, to my knowledge -- and Mr. Goldberg can

02:36:22  1    correct me if I'm wrong -- in that chat room, there was one

02:36:24  2    other individual from Oklahoma who was posting images with

02:36:27  3    regard to his minor.  There's no indication, from my

02:36:34  4    understanding, that Mr. McClure even knew that person or that

02:36:36  5    they had any relationship, other than that they were both in

02:36:38  6    that room at the same time.

02:36:40  7            There's not in that room -- and this is certainly

02:36:43  8    relevant to what a sentence should be in total under CCE.

02:36:45  9    There's not even anyone else in that room, that I know of, that

02:36:49  10   we've been shown, that produced any significant amount of child

02:36:53  11   pornography.  And when I say "produced," I'm using it in terms

02:36:56  12   of distributing it over the internet.

02:36:58  13           So we know that the individual from Oklahoma posted a

02:37:00  14   number of photos.  I would say less than ten.  And the two

02:37:04  15   different dates that we saw, which was, I believe, July 14th and

02:37:08  16   July 24th; and a very single-digit number of videos.  So what

02:37:13  17   we're talking about is Mr. McClure and one other individual in a

02:37:16  18   chat room distributing child pornography.

02:37:21  19           Now, Mr. Goldberg says that he references the *Boone*

02:37:24  20   case which was a sentencing from this last week or the week

02:37:28  21   before with Judge Rodgers, and he tries to say that

02:37:31  22   Mr. McClure's offense would be more severe than the *Boone* case.

02:37:33  23   And to me, that's just preposterous because Mr. Boone in that

02:37:38  24   case had actual sexual activity with his minor, I believe it was

02:37:43  25   his minor daughter, and posted those images over the internet.

| | | |
|---|---|---|
| 02:37:49 | 1 | And I believe that those images reflected her face.  And that -- |
| 02:37:56 | 2 | we just do not have those facts in this case, and that's |
| 02:37:59 | 3 | particularly important. |
| 02:38:02 | 4 | I would submit, Your Honor, that 20 years here is a |
| 02:38:07 | 5 | more-than-sufficient sentence.  Certainly, less than 30 years is |
| 02:38:12 | 6 | merited based on what we know about the offense itself, what we |
| 02:38:15 | 7 | know about CEE offenses in general and how severe they are, and |
| 02:38:19 | 8 | of course that's why we have a 20-year mandatory minimum for CEE |
| 02:38:22 | 9 | because it is such an enormous rare offense.  And what we see |
| 02:38:29 | 10 | Mr. McClure engaged in is egregious; but it's frankly very, very |
| 02:38:34 | 11 | common.  It is incredibly common, so much so that even the |
| 02:38:41 | 12 | Sentencing Commission reports that there's a 422 percent |
| 02:38:42 | 13 | increase in the number of production offenders sentenced over |
| 02:38:46 | 14 | 15 years, and the penalties couldn't be, frankly, any higher. |
| 02:38:49 | 15 | So I would submit that it even -- certainly should -- |
| 02:38:52 | 16 | one should ask the question as to whether or not a sentence, |
| 02:38:54 | 17 | particularly for someone like Mr. McClure, significantly over |
| 02:38:58 | 18 | that mandatory minimum of 20 years really has any significant |
| 02:39:03 | 19 | deterrent value, generally or otherwise. |
| 02:39:07 | 20 | Certainly for -- this is my last comment, Your Honor. |
| 02:39:10 | 21 | Certainly for specific deterrence as to Mr. McClure, the last |
| 02:39:14 | 22 | thing I would point out is it just -- it's unjust for |
| 02:39:19 | 23 | Mr. McClure to be looking at, on these facts, a sentence that's |
| 02:39:26 | 24 | at the max of even production where he is low risk, no criminal |
| 02:39:31 | 25 | history, with this offense being as common as it is; but |

02:39:36  1    certainly being distinguished by the fact that he doesn't have
02:39:39  2    some of the most egregious aggravators that would put someone at
02:39:42  3    the midpoint or the high point of those respective ranges for
02:39:46  4    CEE and production; but who's also low risk after 20 years, has
02:39:50  5    hypogonadism, and has come in to the Court, and he has not
02:39:54  6    raised any frivolous objections.  He didn't take up the Court's
02:39:58  7    time with a week-long trial raising a bunch of ridiculous
02:40:02  8    claims, and I certainly would say that the fact that he accepted
02:40:04  9    responsibility in this case is ultimately relevant toward how
02:40:08  10   well he'll do given that he has accepted responsibility when he
02:40:13  11   gets treatment coming out on supervised release which you can
02:40:16  12   impose, Your Honor, for life.
02:40:19  13          And so for all those reasons, Your Honor, I'm asking
02:40:21  14   for a sentence that's as close to the mandatory minimum for the
02:40:25  15   CEE of 20 years as possible.
02:40:29  16          THE COURT:  All right.  Thank you, Counsel.
02:40:31  17          All right.  Counsel, thank you both for your
02:40:33  18   arguments.
02:40:37  19          Mr. McClure, I've got two jobs to do today.  The first
02:40:41  20   one is a very easy job, and I'll do it very quickly.  Based upon
02:40:47  21   the pleas that you entered and that were accepted, I am going to
02:40:50  22   adjudicate you guilty of Counts One, Three, and Four in the
02:40:54  23   indictment.  That then brings me to the more difficult job I
02:40:57  24   have today, and that job is to determine what sentence is
02:41:03  25   sufficient but no greater than necessary for those offenses.

02:41:06  1        And in deciding your sentence -- and any sentence --
02:41:11  2   I'm required to take into consideration a number of different
02:41:16  3   things:  The guideline range that we spent a lot of time talking
02:41:18  4   about is one of those factors.  The history and characteristics
02:41:21  5   of you as an individual defendant is another.  The seriousness
02:41:25  6   of the crime, the need to promote respect for the law, the need
02:41:29  7   to deter you and others from committing this sort of crime, the
02:41:33  8   need for any restitution that might be there, the need for any
02:41:36  9   treatment that you might have.  And those factors, as you can
02:41:42  10  imagine, some might cut for you and others might cut against
02:41:45  11  you; and my task is to put them all into the pot and do my best
02:41:51  12  to come up with a just sentence.

02:41:53  13       And that is not an easy task.  And I'm not asking for
02:41:57  14  any sympathy, just as you've not asked for any sympathy.  It's
02:42:00  15  my job.  But it is something I take very seriously.  And I try
02:42:05  16  to spend a fair amount of time explaining my sentence, and I
02:42:08  17  don't do it just to hear myself talk.  I do it for your benefit
02:42:11  18  so you understand my thinking in determining what the sentence
02:42:16  19  will be.  I do it for the family, I do it for the Government, I
02:42:19  20  do it for everyone so it is very clear to anyone who
02:42:24  21  participates in this process or observes this process that your
02:42:29  22  case has been given due consideration.

02:42:33  23       Because before 2005, when the Supreme Court decided a
02:42:36  24  case named *Booker*," the guideline ranges were mandatory.  And
02:42:41  25  once that guideline range was determined, there were very, very

02:42:46  1   few circumstances that would allow the judge to deviate from

02:42:49  2   that guideline range.

02:42:51  3          So this discussion back in 2004, long before I was on

02:42:56  4   this bench, would have been a very short discussion because your

02:42:59  5   guideline range has been calculated.  Your lawyer's preserved a

02:43:03  6   number of arguments as to that calculation.  But it is what it

02:43:06  7   is, and that would be the sentence that would be imposed.  And I

02:43:10  8   would close my file and I would go about my business.  And in a

02:43:14  9   lot of respects, that would be a lot easier, make my job a lot

02:43:18  10  easier.

02:43:18  11         Now the guideline range is just one factor that I am

02:43:21  12  to consider, and I am to come up with essentially an

02:43:23  13  individualized sentence, one that I often call a "Goldilocks

02:43:27  14  sentence," one that is not too harsh but not too lenient after

02:43:32  15  taking into consideration all those factors.

02:43:34  16         And so in looking at your sentence, you captured a lot

02:43:40  17  of the essence of it.  What you did was horrendous.  It is a

02:43:44  18  serious crime.  It's a disgusting crime.  Any crime involving a

02:43:48  19  child is a serious offense.  They're some of the more

02:43:57  20  reprehensible offenses that we have in society because children

02:44:00  21  are innocent, children are trusting.  And child pornography is

02:44:05  22  no different.  The harm that it causes to our most vulnerable

02:44:10  23  citizens is immeasurable and is lifelong, lasting, and extends

02:44:17  24  to their life.  Harsh punishment is warranted.

02:44:21  25         But as Mr. Lockhart suggested -- and he should not

02:44:29  1    apologize for making the argument because I think it is a fact,

02:44:34  2    and even the Government, I think, acknowledges it -- not every

02:44:36  3    child pornography case is the same.  There is a spectrum of

02:44:40  4    offenses under the heading or the banner of child pornography.

02:44:44  5    And while all of them are bad -- and I don't want there to be

02:44:48  6    any mistake in what I'm saying here:  Every child pornography

02:44:51  7    offense is bad -- some are worse than others.  It's one thing

02:44:55  8    for a middle-aged man to be sitting in his mother's basement

02:44:59  9    downloading things off the internet and getting whatever

02:45:03  10   gratification he gets from that.

02:45:07  11        On the other hand, at the other end of the spectrum,

02:45:10  12   there is child pornography offenses where you have someone

02:45:13  13   engaged in sexually abusing a child, filming that, producing

02:45:20  14   that on the internet for all to see.  Those, in my mind, are the

02:45:24  15   two ends of the spectrum.  And the challenge I have in these

02:45:28  16   cases is figuring out where a particular defendant fits on that

02:45:32  17   spectrum, and it rarely is as clear cut as I just said on those

02:45:37  18   ends of the spectrum, and your case is no different.

02:45:41  19        Your case is a case that is certainly not at the

02:45:45  20   bottom end of the range because you produced images.  You

02:45:48  21   weren't one who just consumed images others produced; you

02:45:52  22   actually produced images.  And even those who consume images

02:45:55  23   that others produce, those images aren't just pixels on a

02:46:01  24   screen.  Those images are depictions of actual children

02:46:08  25   suffering actual physical sexual abuse or being exploited even

02:46:15  1    if they're not being physically abused.  So it's not a

02:46:19  2    victimless crime.  But the crime that you've committed in

02:46:24  3    producing those images for others to consume is worse than

02:46:28  4    simply possessing it or consuming it.

02:46:31  5          We have no indication here, no direct evidence that

02:46:34  6    you physically abused your daughter, and that takes you away

02:46:41  7    from the highest end of the spectrum.  But the most significant

02:46:48  8    factor to me in this case, and you touched on it in your

02:46:51  9    comments, is that a father's job is to protect his daughter from

02:47:02  10   perverts that you were providing this material to.  You utterly

02:47:11  11   and completely failed in that job.  And the long-lasting effects

02:47:18  12   that's going to have on your daughter -- because these images, I

02:47:22  13   guess we don't know for a fact where these images are, if they

02:47:27  14   were in a closed universe and it never escaped.  But the

02:47:31  15   likelihood is that that's not the case; that these images are

02:47:35  16   circulating out there in the cloud somewhere and out there in

02:47:38  17   all these communities.  And every time someone downloads one of

02:47:42  18   those images, your daughter is being victimized.  Her face isn't

02:47:46  19   seen, which is, I guess, good, but it's still her.  She's still

02:47:52  20   being victimized.  She's going to live the rest of her life

02:47:55  21   knowing that there are middle-aged men in their basements doing

02:47:59  22   the things that we saw in these pictures to pictures of her.

02:48:02  23   And that's going to take a lot of counseling, that's going to

02:48:06  24   take a lot to get over; and there is nobody to blame for that

02:48:13  25   but you, the one person that she trusted to keep her safe.  And

02:48:17  1    so that is an extremely -- an extreme aggravating factor, and

02:48:21  2    not aggravating that it upsets me, aggravating that it enhances

02:48:26  3    the seriousness of this crime.

02:48:28  4         And so against that, what I have to determine, are

02:48:32  5    there any mitigating factors that offset that?  And the

02:48:36  6    mitigating factors that I've been presented here are that you

02:48:42  7    don't have any significant criminal history.  You have the state

02:48:45  8    case that is pending, which you'll have to deal with in the

02:48:49  9    state court; but other than that, you have relatively no

02:48:53  10   criminal history.

02:48:54  11        The other mitigating evidence in Dr. Spoerl's report,

02:48:59  12   a couple of things she highlighted, was this testosterone issue.

02:49:04  13   But even she acknowledges that "testosterone did not make

02:49:09  14   Mr. McClure develop deviant sexual interest."  And some of the

02:49:13  15   things she says in that report that you, being aroused by

02:49:18  16   prepubescent and pubescent girls between the age of 11 and 13;

02:49:23  17   and while denying any interest in incest, your daughter, at some

02:49:27  18   point, was going to be 11 to 13, and that's troubling.

02:49:30  19        And so the report -- the mitigating evidence that I've

02:49:33  20   been presented creates more concern in my mind about where this

02:49:38  21   would go if you are not incarcerated for a significant period of

02:49:42  22   time to get the treatment, to get the help, and to figure out

02:49:47  23   why this happened and how it will not happen again.  And so

02:49:51  24   ultimately, there is not a lot that I'm seeing from a mitigating

02:49:57  25   perspective.

02:49:59  1          Mr. Lockhart has made a compelling argument, and it's

02:50:03  2  one of the factors I'm to consider, is to make sure that like

02:50:07  3  crimes are punished in a like manner.  And that's a challenge

02:50:12  4  because every defendant is the same -- is not the same, excuse

02:50:16  5  me.  An individual who comes before me with a Criminal History

02:50:20  6  Category of I may still have a series of criminal offenses in

02:50:27  7  their background that occurred so far back that they don't get

02:50:30  8  scored, but they are still in the same category as somebody who

02:50:34  9  has never had a speeding ticket.

02:50:36  10         And so it's hard to get an exact sentence from one

02:50:43  11  defendant to another, but you do try to get in the same range,

02:50:47  12  that somebody should not be given a life sentence where the guy

02:50:51  13  down the hall is getting a probationary sentence.  In looking at

02:51:00  14  some of the cases the parties have presented and suggested that

02:51:02  15  you're the same as or you're worse than and, thus, that you

02:51:03  16  should get those sentences, they really don't provide me a lot

02:51:05  17  of guidance.

02:51:06  18         I do tend to agree with Mr. Lockhart that this

02:51:10  19  production -- or, excuse me, this exploitation enterprise

02:51:14  20  offense is really targeted for -- while certainly you meet the

02:51:18  21  letter of it, it's really targeted for a different type of

02:51:21  22  activity.  And so that's something I take into consideration in

02:51:25  23  determining whether the guidelines and the sentence related to

02:51:28  24  that is the one that really fits squarely here.

02:51:32  25         On the other hand, some of the people that I've

02:51:34 1  sentenced to effective life sentences have involved physical

02:51:39 2  contact.  And so looking at the fact that you did not is

02:51:42 3  something that weighs into my mind in evaluating where you need

02:51:46 4  to be in a sentencing range.

02:51:49 5      From a deterrent perspective, I think Mr. Lockhart was

02:51:55 6  correct in saying that these offenses are incredibly common.

02:51:58 7  And to me that's a problem.  What that says to me is that the

02:52:02 8  sentences that are being handed down for these offenses are not

02:52:06 9  significant enough to get the message across to the middle-aged

02:52:10 10 men in the basement that we don't need to engage in this.  And

02:52:13 11 if you have the consumers of these products, these images, no

02:52:19 12 longer engaging in that activity, there will be no reason for

02:52:22 13 people to produce it.

02:52:24 14     And so I think that the, you know, statistics which

02:52:30 15 are all reflected in the Sentencing Commission data do not do

02:52:35 16 justice to the seriousness of this crime and, in fact, really

02:52:39 17 seem to understate -- I think the Sentencing Commission and the

02:52:45 18 arguments that are being made based upon the guideline

02:52:47 19 calculations being too severe are missing the point.  I think

02:52:51 20 the guidelines are supposed to be severe and need to be adjusted

02:52:56 21 so the base offense level goes up, so we don't have to just

02:52:59 22 raise it through all these enhancements that apply in every

02:53:02 23 case.

02:53:02 24     But the bottom line is these offenses are being

02:53:06 25 guideline-scored correctly.  I just don't know if they're being

02:53:10  1    sentenced correctly.  But that's a little bit of an editorial

02:53:16  2    comment, but it goes into the question of disparate sentences

02:53:19  3    and the need to avoid that.

02:53:20  4         The need to promote respect for the law and deter,

02:53:24  5    you, individual.  I'm fairly confident that whatever sentence is

02:53:28  6    imposed will have a significant deterrent effect upon you.  And

02:53:33  7    so the question is to decide at what point does that deterrent

02:53:37  8    effect get lost and it just become a vindictive sentence, and

02:53:42  9    that's the line I don't intend to cross and will not cross.

02:53:46  10        Some other aggravating factors.  Certainly, the chat

02:53:51  11   communications that we saw are beyond the pale of what one would

02:53:59  12   expect a father to say to anyone or to even think about their

02:54:04  13   own daughter.  And so the fact that you'd be willing to say

02:54:07  14   that, distribute those images of your own daughter raises

02:54:11  15   significant concern in my mind, particularly given the doctor's

02:54:18  16   diagnosis of a pedophilic disorder, of what you might do to

02:54:23  17   other people's children.  And so that's something that weighs

02:54:26  18   into a deterrent effect and a punishment effect.

02:54:30  19        Finally, some of the others factors that I took into

02:54:33  20   consideration -- and it took me a while going through the

02:54:38  21   presentence report to follow the law enforcement work that was

02:54:43  22   far beyond my technical capability.  But just the different

02:54:47  23   layers of registrations that you had with fictitious names that

02:54:54  24   made it very difficult for them to trace it back to you suggests

02:54:58  25   a knowledge that what you were doing was wrong and a desire to

02:55:06  1    cover it up.  And that is troubling in and of itself.

02:55:10  2         And the fact that you were an administrator, whatever

02:55:14  3    that means -- I read the doctor's report saying that it didn't

02:55:16  4    mean what the Government thinks it means.  Whatever it might

02:55:19  5    have meant, the fact that you had some sort of -- "leadership"

02:55:26  6    might not be the right word, but some sort of role in this group

02:55:30  7    other than just a participant is an aggravating factor as well.

02:55:34  8         So those are the factors that I've kind of weighed

02:55:37  9    into my calculus here in trying to come up with a sentence that

02:55:41 10    is appropriate.

02:55:42 11         Certainly taking into consideration your comments, the

02:55:45 12    doctor's view that you need treatment, you need help, and that

02:55:49 13    needs to be part of any sentence that you get, and it needs to

02:55:54 14    be part of any post-incarcerative sentence you get.  But taking

02:56:00 15    everything into consideration --

02:56:04 16         One last thing.  I'll be clear and the lawyers will

02:56:07 17    appreciate this or understand why I'm saying this, and I'll

02:56:11 18    explain to you why I am.  But the sentence I'm about to impose

02:56:13 19    would be the same sentence I impose, irrespective of whether the

02:56:16 20    guideline range was life, whether the guideline range was 360 to

02:56:19 21    life, or whether the guideline range was -- whatever the other

02:56:29 22    number we talked about, 292 to 365.

02:56:35 23         You know, all of those things I've taken into

02:56:38 24    consideration in determining what a sentence would be, but the

02:56:42 25    sentence I'm imposing is the one that I think is sufficient and

02:56:44  1  no greater than necessary after taking all of these factors into

02:56:48  2  consideration.  And the sentence is a downward variance from the

02:56:52  3  guideline range of life.  But I cannot, in good conscience or in

02:56:58  4  any sense of justice, find that a sentence down to where

02:57:03  5  Mr. Lockhart ably argued for is anything appropriate in this

02:57:07  6  case.  And so the sentence that I find to be sufficient but no

02:57:09  7  greater than necessary in this case is a 50-year sentence.  That

02:57:14  8  sentence is determined in two ways.

02:57:19  9       On Count One, it would be a 50-year sentence, which is

02:57:22  10  within the statutory range of that.  Additionally, or

02:57:25  11  alternatively, the way I would get there, because, again, that

02:57:29  12  child exploitation enterprise, while legally and factually

02:57:32  13  applies here, it really doesn't fit as well.  But I think -- and

02:57:36  14  I know I would get to the same sentence by imposing a 30-year

02:57:40  15  sentence on Count Three, which is the production of these images

02:57:43  16  of your very own daughter, and on Count Four with a 20-year

02:57:48  17  consecutive sentence for distributing these to this chat room.

02:57:54  18       And so the 30-year and 20-year consecutive sentence,

02:57:59  19  those will run concurrent with Count One.  So your total

02:58:03  20  sentence is a 50-year sentence.

02:58:05  21       That will be followed -- because I think you have a

02:58:08  22  problem that you're going to be dealing with the rest of your

02:58:10  23  life, that will be followed by a lifetime term of supervised

02:58:13  24  release.  While on supervised release, you'll be subject to the

02:58:18  25  conditions that normally apply here in the Northern District of

02:58:23  1  Florida; and those will all be explained to you upon your

02:58:27  2  release, as well as the specific conditions that are laid out in

02:58:29  3  the presentence report at paragraph 116 to 136.  And those

02:58:35  4  include things such as sex offender-specific conditions,

02:58:39  5  restrictions on computer use, and treatment requirements, as

02:58:43  6  well as financial conditions based upon the restitution I'll be

02:58:47  7  ordering here in a minute, as well as the search and seizure

02:58:49  8  conditions.  And again, all of those will be explained to you by

02:58:53  9  the probation office or the BOP upon your release.

02:58:57  10      The other components of your sentence, I'm not going

02:59:02  11  to impose a separate fine because I find that you do not have

02:59:06  12  the ability to pay that.  There are two assessments that apply

02:59:10  13  under the circumstances.  One of them is the Justice and Victims

02:59:12  14  of Trafficking Act.  That fine I'm going to waive based upon

02:59:16  15  your indigent status.  However, under the Amy, Vicky, and Andy

02:59:21  16  Act, I am required to impose a fine.  It could be as high as

02:59:25  17  $50,000, but I would rather see your money going towards

02:59:28  18  restitution of the victims here, and so the fine I'm going to

02:59:31  19  impose there is a $1,000 fine.

02:59:35  20      Restitution.  There are two victims in this case who

02:59:38  21  have requested restitution.  Your daughter's mother who is going

02:59:43  22  to be responsible for getting the treatment that your daughter

02:59:45  23  needs for the course of her life, and she's requested the

02:59:51  24  statutory minimum of $3,000, and I find that to be reasonable

02:59:53  25  and appropriate.

02:59:55  1          Additionally, the victim in the "Tara" series has

02:59:59  2     requested restitution.  And again, I think the $3,000 statutory

03:00:02  3     minimum is reasonable and appropriate there, and so that will be

03:00:05  4     imposed.  So a total of $6,000 in restitution.

03:00:10  5          Finally, under the law I am required to impose a

03:00:14  6     special assessment of $100 per count for a total of $300 based

03:00:18  7     upon your felony convictions.  All of those assessments and

03:00:23  8     fine -- and restitution will be due immediately.

03:00:26  9          In the event that you're unable to pay that

03:00:27  10    immediately, there will be opportunities for you to do so while

03:00:30  11    you're in prison.  If by the time you're released, you're unable

03:00:34  12    to pay that, your obligation will begin 60 days after your

03:00:40  13    release to pay $100 a month towards those amounts.  And on the

03:00:43  14    restitution, I'm going to -- or at least, excuse me, on the

03:00:51  15    fine, the assessment -- rather, the Amy, Vicky, Andy assessment,

03:00:59  16    I'm going to waive any interest; and on the restitution, I would

03:01:00  17    not because I think those victims need that money, and if they

03:01:03  18    don't get it for a longer period of time, they need to be

03:01:06  19    compensated therein.  So that would not be waived.

03:01:08  20          The one last thing I'm going to impose -- and I've

03:01:12  21    never imposed this before, but I think it's appropriate here.  I

03:01:16  22    don't know what's going to happen with your family situation.  I

03:01:20  23    don't know whether you'll lose the rights to your daughter.

03:01:24  24    That's not for me to determine.  That's for the state court

03:01:27  25    system and the state department of community -- or children and

03:01:32 1    families to determine.  What I think you need to do over the

03:01:40 2    course of your time in prison, over the course of your

03:01:44 3    treatment, your daughter is going to ask, and it appears from

03:01:47 4    the letter that your wife or ex-wife sent, has already asked,

03:01:50 5    Why did this happen?  Why did Dad do this?  Why he is going

03:01:54 6    away?  And I think you owe it to her to have an answer to that.

03:02:00 7        And I don't think at this age she is prepared to

03:02:04 8    understand that answer.  I don't think at this age -- or at this

03:02:08 9    point in time you're prepared to give that answer.  But at some

03:02:13 10   point, she's going to ask that question through her therapist.

03:02:15 11   And so what -- the obligation I'm going to include as part of

03:02:19 12   your judgment is that you prepare a letter to your daughter

03:02:24 13   explaining why this happened, whatever you feel you need to say

03:02:30 14   to -- not justify it, because, as you said, you can't justify

03:02:33 15   it, but to help her understand that this is not her fault, this

03:02:39 16   is your fault, and to help her understand whatever you think you

03:02:42 17   need to to convey to her.

03:02:45 18       And that letter will go through probation.  You'll

03:02:49 19   direct it to probation who will give it to her therapist or her

03:02:53 20   mother, whichever they deem appropriate, to give to her at the

03:02:56 21   appropriate point in time.  Because I don't think she could

03:02:59 22   understand it now nor would it be fair to give that to her now,

03:03:03 23   and they may determine that she would never understand it.  But

03:03:06 24   I think that is appropriate given the fact that, as you've told

03:03:09 25   me, you're still struggling to understand it.  You can only

03:03:13  1    imagine how a six-year-old child is going to understand it.  So

03:03:16  2    that will be part of your sentence as well.

03:03:18  3              All right.  Ms. Dancy, have I covered everything?

03:03:22  4              PROBATION OFFICER:  I believe so, Your Honor.  I

03:03:24  5    didn't catch how you're running the counts.  Are they all

03:03:27  6    concurrent?

03:03:28  7              THE COURT:  I am running -- Count One is 50,

03:03:31  8    concurrent with Three and Four.  Three is 30, Four is 20

03:03:38  9    consecutive.  So One is 50 and Three and Four are 50 altogether,

03:03:43  10   so the total is 50.

03:03:45  11             PROBATION OFFICER:  Counts One and Three are

03:03:46  12   concurrent and Count --

03:03:49  13             THE COURT:  Four is consecutive to Three.

03:03:51  14             PROBATION OFFICER:  Okay.

03:03:51  15             THE COURT:  That make sense?

03:03:53  16             PROBATION OFFICER:  Yes.

03:03:53  17             THE COURT:  All right.  Mr. Goldberg, from the

03:03:55  18   Government's perspective, anything I haven't covered?

03:03:58  19             MR. GOLDBERG:  Your Honor, I know during supervised

03:03:59  20   release he will have to register as a sex offender.  The only

03:04:02  21   other thing I'll ask the Court to orally pronounce is to adopt

03:04:06  22   the preliminary order of forfeiture, which is Document 35.  And

03:04:08  23   the Government can always file a final motion request on the

03:04:12  24   record, but I do ask the Court to incorporate it to its oral

03:04:16  25   judgment today.

03:04:17  1          THE COURT:  All right.  And that was for the phone,

03:04:18  2   essentially?

03:04:20  3          MR. GOLDBERG:  Yes, Your Honor.

03:04:21  4          THE COURT:  Okay.  That will be adopted as part of the

03:04:23  5   judgment.

03:04:24  6          MR. GOLDBERG:  Other than that, the only thing -- and

03:04:25  7   it doesn't relate to the sentence itself -- the Government would

03:04:26  8   formally move to dismiss the remaining counts pursuant to the

03:04:30  9   plea agreement.

03:04:31  10          THE COURT:  And what were the other counts?  I guess

03:04:33  11   Two and...

03:04:34  12          MR. GOLDBERG:  Two and Five and Six.

03:04:35  13          THE COURT:  Okay.  Those will be dismissed.

03:04:38  14          All right.  Mr. Lockhart, anything I haven't covered?

03:04:41  15          MR. LOCKHART:  Nothing beyond what we already talked

03:04:42  16   about, Your Honor.

03:04:43  17          THE COURT:  All right.  So any objections other

03:04:45  18   than -- to the sentence or the manner in which it was imposed

03:04:48  19   other than those you've previously stated?

03:04:50  20          MR. LOCKHART:  No, Your Honor.

03:04:51  21          THE COURT:  Okay.  One thing I didn't ask was location

03:04:56  22   of incarceration.

03:04:58  23          Mr. McClure, understand that I can't direct the Bureau

03:05:00  24   of Prisons where to house you, but if you had your preference,

03:05:05  25   where would you like to be close to?

03:05:24  1          THE DEFENDANT:  I would say, Your Honor, as close to

03:05:26  2   Pensacola as possible.

03:05:27  3          THE COURT:  All right.  Well, I'll include that

03:05:30  4   recommendation in the judgment.  And again, understand that the

03:05:34  5   bureau will place you where your classification and your offense

03:05:37  6   puts you.  That may very well be Marianna, which will probably

03:05:41  7   be as close to Pensacola as you could get, but I will include

03:05:44  8   that recommendation because that makes as much sense as anywhere

03:05:49  9   else.

03:05:49  10         All right.  Mr. McClure --

03:05:51  11         Yes, ma'am.

03:05:53  12         PROBATION OFFICER:  I'm sorry.  Did you set a monthly

03:05:54  13   amount for restitution?

03:05:55  14         THE COURT:  I think I did, at $100 a month.

03:05:58  15         PROBATION OFFICER:  Okay.

03:05:59  16         THE COURT:  Unless he can't pay that, and then he'll

03:06:02  17   work with probation to come up with an amount he can pay.

03:06:06  18         All right.  Mr. McClure, I never ask whether a

03:06:10  19   defendant agrees with the sentence because, frankly, I don't

03:06:14  20   care about that, but I always ask whether they understand it

03:06:17  21   because that is it important to me.

03:06:18  22         So, do you understand the sentence?

03:06:20  23         THE DEFENDANT:  I do understand, Your Honor.

03:06:22  24         THE COURT:  Any questions at all about it?

03:06:23  25         THE DEFENDANT:  No, sir.

03:06:24   1          THE COURT:  Okay.  The last thing I need to advise you

03:06:25   2   about is your right to appeal.  Even though you entered a plea

03:06:28   3   in this case, you still do have the right to appeal the sentence

03:06:30   4   that I've imposed.  And your lawyer's preserved a number of

03:06:33   5   arguments that he might want to raise on appeal, if that's

03:06:37   6   something you want to pursue.  If it is, have a conversation

03:06:40   7   with him today and let him know that's something you'd like to

03:06:43   8   do, appeal, and he'll get the paperwork started for you because

03:06:47   9   you'd have the right to an attorney to represent you in an

03:06:50  10   appeal if you couldn't afford one.

03:06:51  11          If for whatever reason you have a conversation with

03:06:54  12   Mr. Lockhart today and you tell him you don't want to appeal but

03:06:56  13   you change your mind and you can't get back in touch with him,

03:06:59  14   if you get a letter to the Clerk of Courts, they can get the

03:07:04  15   appeal paperwork started for you.  The most important thing to

03:07:06  16   know is that there's a very short 14-day window within which an

03:07:10  17   appeal has to be filed; and if you miss that window, any right

03:07:14  18   to appeal that you have will be lost.

03:07:16  19          Any questions about that?

03:07:17  20          THE DEFENDANT:  No, sir.

03:07:19  21          MR. LOCKHART:  Your Honor, may I request one thing?

03:07:22  22          THE COURT:  Sure.

03:07:22  23          MR. LOCKHART:  The Court may be doing this already,

03:07:23  24   but could I ask that Dr. Spoerl's report be attached to the

03:07:27  25   presentence report that goes to the Bureau of Prisons?

03:07:28 1                THE COURT:  Okay.  Any objection to that?

03:07:30 2                MR. GOLDBERG:  No, Your Honor.

03:07:31 3                THE COURT:  All right.  That will be done.

03:07:32 4                All right.  Mr. McClure, I do wish you the best of

03:07:38 5     luck.  You know, sometimes good people do bad things; sometimes

03:07:43 6     bad people do bad things.  And I certainly hope this is an

03:07:46 7     occasion of somebody who is an otherwise good person, did a

03:07:49 8     very, very bad thing.  And it's going to take a lot of time, and

03:07:53 9     you've got a lot of time to think about it.  And it's going to

03:07:56 10    take a lot of time for your daughter to make it through this,

03:07:58 11    and I wish you both the best of luck in getting through it.

03:08:02 12               We're adjourned.

03:08:03 13         (Proceedings adjourned at 3:08 p.m.)

14                         * * * * * * * *

15         I hereby certify that the foregoing is a true and correct
       transcript of the stenographically reported proceedings held in
16     the above-entitled matter, pursuant to the provisions of Section
       753, Title 28, United States Code.

17

18     _____          6/7/22

19     _____     _____
       Julie A. Wycoff, RMR, CRR           Date
       Official U.S. Court Reporter
20

21

22

23

24

25